WHIPPLE, C.J.
Lin this property dispute, defendants, Magnolia Ridge Properties, LLC and Raymond W. Banker, Jr., appeal from a judgment of the trial court rendered in favor of plaintiffs, Paul A. Kadair, Sr. and Melanie R. Kadair. For the reasons that follow, we affirm in part and vacate in part.
FACTS AND PROCEDURAL HISTORY
Paul Kadair purchased Tract H of Creekround subdivision in West Feliciana Parish on April 25,1974. Kadair then met Herman Endlekofer, who owned Tracts W and X, at a Creekround subdivision meeting. Endlekofer, who lived in Baton Rouge, asked Kadair to maintain his fence on the north line of his property and a road that went through his property, since Kadair lived nearby in Creekround. Ka-dair agreed, and in exchange, Endlekofer allowed him to use the property as he wished. By act of cash sale dated March *697 9, 1992, Paul and Melanie Kadair eventually purchased Tracts W and X from Endle-kofer.
By act of cash sale dated December 3, 2009, Magnolia Ridge Properties, LLC, (“Magnolia Ridge”) represented by Raymond W. Banker, Jr., purchased two parcels of land from Coastal Tie & Timber Company, Inc., represented by Steven K. Jones. These parcels were adjacent to Tracts W and X (owned by the Kadairs) with the first parcel described as Tract 2-C, containing 223.59 acres of land, and the second parcel described as Tract 2-B-2, containing 111.795 acres of land.
Thomas J. Hampton, an original developer of Creekround, and his wife, Janelle Bramlett Hampton, owned a “Reserved” 1.661 acre parcel of land bounded on the north and west by Tract 2-B-2 (owned by Magnolia Ridge) and on the south and east by Tract W (owned by the Kadairs) (hereinafter the “Reserved Tract”).
|3On January 11, 2011, the Kadairs filed a “Boundary Action Petition” naming the contiguous property owners, Thomas and Janelle Hampton, Magnolia Ridge, and Banker, as defendants therein. Through their original and supplemental petitions,[1] the Kadairs contended that they possessed Tracts W and X, “together with such additional property as has been possessed by petitioners and their ancestors in title for more than 30 years.” (Emphasis added.) The Kadairs alleged that they had possessed the claimed additional property for themselves, and prior to that, precariously for Endlekofer, for “many decades.”[2] The Kadairs described the claimed “additional property” as property-somewhat northerly of the Kadairs’ Tract W, but enclosed by and south of a barbed wire fence that traversed across the Reserved Tract, owned by the Hamptons, and on into Tract 2-B-2, owned by Magnolia Properties. The property south of the barbed wire fence line in the Reserved Tract was described as being an “irregular arc” believed to measure 399.85 feet, with the radius of the arc to be approximately 250 feet, and the portion of property south of the fence line in Tract 2-B-2 is a 1.62 acre area referred to herein as the “disputed property.” The Kadairs specifically alleged that they, together with their ancestors in title had possessed the disputed property south of the fence line “as owners together up to and across the section lines, all for over 30 years continuously, uninterrupted, and peaceable [sic] except for a confrontation with Walter Glenn Soileau, believed to be a trespasser, who ultimately withdrew from the contentious acts and threats of future acts until recently [when] [Banker and Magnolia Ridge] and Thomas and Janelle Hampton disturbed [the Ka-dairs’] possession.” The Kadairs alleged that 14no one besides themselves had possessed the disputed property south of the fence line, except with the express permission of Paul Kadair, and then only for limited purposes.
The Kadairs specifically contended that within the perimeter of the disputed property, they exercised acts of possession, including cutting their own fire wood as well as selling timber up to the fenced boundaries, moving freely over the entire tract, walking, building roads, maintaining drainage, planting trees and plants, taking guests, engaging in leisurely activities, tak *698 ing photographs, hunting, engaging in recreation, relaxing, camping, riding horses, installing and maintaining power lines, riding dune buggies, and riding four wheelers.
The Kadairs further alleged that Tract W contained a purported servitude, but had no designated dominant estate and was therefore deficient for lack of form and substance. Thus, the Kadairs alleged the purported servitude should be adjudged to have no legal effect and declared invalid as lacking the requisite elements of a servitude. With reference to the servitude, the Kadairs contended that the fence along the northern boundary of the Ka-dairs’ Tract W had been placed so that neither Magnolia Ridge, nor its ancestors in title, had crossed Tract W ever since the barbed wire fence was erected, although they had traveled across the Reserved Tract with the Kadairs’ express permission. Accordingly, the Kadairs prayed that: (1) the deficient servitude be declared invalid and adjudged to have no legal effect; and (2) that the boundaries between the properties be fixed in accordance with the law and evidence.
The developers of Creekround subdivision retained Brown and Butler to prepare the initial survey plat in 1972 when they subdivided the property. The servitude and two of the parcels of immovable property involved in this proceeding are depicted in the following excerpt from the final plat for Creekround subdivision dated May 12, 1972, and revised on January 18, 1973:
[[Image here]]
Defendants filed an answer to the Ka-dairs’ petition to fix or set the boundary: (1) denying that the Kadairs established requisite title to the defendants’ property by acquisitive prescription of thirty years, as required by law; and (2) asking the trial court to recognize as the legal boundary between the two properties the titled boundaries of the parties’ respective tracts according to the maps of survey by which the various tracts were acquired.
*699 Defendants subsequently filed a motion for summary judgment, contending that the Kadairs could not show that they have possessed the disputed property for thirty years as required under LSA-C.C. art. 794, and that the court accordingly was obligated to look to the titles of the parties to establish their common boundaries.[3] Thus, the defendants sought summary judgment fixing the boundary between these parties at the section line between Section 88 and Section 70, T1S, | ñR4W as the record title boundary between these two parties. The trial court denied the defendants’ motion for summary judgment.[4]
The Kadairs thereafter filed a motion in limine, seeking an order prohibiting the defendants from introducing any witnesses, evidence, or exhibits concerning any acts of possession on behalf of any of the defendants. The Kadairs contended that in their answer, the defendants asserted title unto themselves “in this pos-sessory action,” and had effectively converted the present action to a petitory action, thus judicially confessing the possession of the Kadairs herein.[5] The trial court denied the Kadairs’ motion in limine, stating “this is a possessory action” that has “not been converted to a petitory action by either party.”
Trial of this matter was held on January 8 and 9, 2013, after which the trial court took the matter under advisement. On February 15, 2013, the trial court issued written reasons for judgment. After hearing the witnesses and considering the evidence, the trial court noted, “The ownership claim of Paul and Melanie Kadair is simple. They assert that they have acquired ownership of the property in question by having possessed the property for more than thirty years.” The 17court then specifically concluded that the “evidence shows that the fence in question has been in existence as a fence continuously for more than thirty years prior to the institution of this litigation” and that the “evidence shows that [the Kadairs], acting for Herman Endlekofer, their predecessor in title, and for themselves, have possessed the disputed area continuously, peaceably, and without interruption for more than thirty years prior to the institution of this litigation.” The trial court then fixed the *700 boundary line as requested by the Kadairs, determining that the “north boundary of Tract W will be fixed according to the fence line as depicted on the plat of survey introduced into evidence as Plaintiffs Exhibit 15.”[6] The trial court further determined and declared that the thirty-foot servitude of passage and utilities across the northwest corner of Tract W shown on the developers’ plat was null, and assessed expert witness fees and costs.
A judgment in favor of the Kadairs was signed by the trial court on March 18, 2013. The judgment, which provided that the matter was tried before the court “pursuant to the Boundary Action Petition filed [by the Kadairs]”: (1) decreed that the Kadairs had possessed the disputed property for over thirty years; (2) ordered that the northern boundary’ of the disputed property be reestablished and fixed at the fence line, as depicted on the December 30, 2012 survey plat prepared by Tobias P. Ford, Jr., and filed of record in the Office of the Clerk and Recorder of West Felicia-na Parish at Book 195, Page 684, File No. 109298; and (3) declared the thirty-foot servitude of passage and utilities established in the 1972 Brown and Butler survey plat null.[7] The judgment further awarded expert | ¡^witness fees and costs and was designated as a partial final judgment pursuant to LSA-C.C.P. art. 1915(B) for purposes of an immediate appeal.[8]
After the denial of their motion for new trial, defendants perfected the instant sus-pensive appeal.[9] On appeal, the remaining defendants (Magnolia Ridge and Banker) contend that the trial court erred in: (1) failing to understand the distinction be *701 tween a possessory action and a petitory action “in trying this case and in its rulings”; (2) failing to apply the appropriate legal requisites to maintain a possessory action in favor of the appellants; and (3) declaring a dedicated predial servitude void without proof of revocation or abandonment.
The Kadairs answered the appeal, seeking an award of damages and attorneys’ fees against defendants pursuant to LSA-C.C.P. art. 2138, for their actions in filing a frivolous appeal.
| aDISCUSSION
Boundary Action and Acquisitive Prescription
In a boundary action, the court shall render a judgment fixing the boundary between contiguous lands in accordance with the ownership or possession of the parties. LSA-C.C.P. art. 3693. The boundary shall be fixed according to ownership of the parties; however, if neither party proves ownership, the boundary shall be fixed according to the limits established by possession. LSA-C.C. art. 792. When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along those lines. LSA-C.C. art. 794. Thus, ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Secret Cove, L.L.C. v. Thomas, 2002-2498 (La.App. 1st Cir.11/7/03), 862 So.2d 1010, 1015, writ denied, 2004-0447 (La.4/2/04), 869 So.2d 889.
Under the codal provisions on acquisitive prescription, a possessor lacking good faith and/Or just title may acquire prescriptive title to land by corporeally possessing a tract for thirty years with the intent to possess as owner. Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1015. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. LSA-C.C. art. 3425. Thirty years of corporeal possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually corporeally possessed. Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1015; see also LSA-C.C. arts. 3424, 3425, 3426, 3476, 3486, and 3487.
| mFor purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. LSA-C.C. art. 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1015. According to well-settled Louisiana jurisprudence, an enclosure is any natural or artificial boundary. Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1015; LSA-C.C. art. 3426, comment (d), Revision Comments-1982, citing A.N. Yiannopoulos, Property §§ 212-214, in 2 Louisiana Civil Law Treatise (2d ed.1980).[10] The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of *702 possession exercised. Secret Cove. L.L.C. v. Thomas, 862 So.2d at 1015.
Under LSA-C.C. art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for thirty years without interruption and within visible bounds. Such a title holder may attain the thirty-year possessory period—which is necessary to perfect prescriptive title in the absence of good faith and just title—by “tacking” on to the possession of his ancestor in title. LSA-C.C. arts. 794 and 3442; Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1015-1016. Under LSA-C.C. art. 794, the privity of title between the possessor and his ancestor in title need not extend to the property to which the possessor asserts prescriptive title; under this article, the juridical link, or written instrument that passes to the possessor from his ancestor in title need not encompass or include the particular property to which the possessor claims prescriptive title. Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1016.
Whether a party has possessed property for purposes of thirty-year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1016. Additionally, boundary location is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error. Secret Cove, L.L.C. v. Thomas, 862 So.2d at 1016. Where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact’s findings demand great deference and are virtually never manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d at 844. It is only when documents or objective evidence so contradict the witness’s story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit the witness’s story, that the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d at 844-845. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO. 549 So.2d at 845.
Challenges to the Judgment Resolving the Boundary Dispute and Fixing the Kadairs’ Boundary (Assignments of Error Numbers One and Two)
In their first two assignments of error, the remaining defendants contend that the trial court erred in “failing to understand the distinction between a possessory action and a petitory action in trying this case and in its ruling,” and | ^secondly, in “failing to apply the appropriate legal requisites to maintain a possessory action in favor of the [Kadairs].”
We note at the outset, that in the instant matter, the Kadairs filed a “Boundary Action Petition,” requesting that the boundary line between their property and the defendants’ property be fixed. In the Ka-dairs’ original and supplemental petitions, they alleged their entitlement to and clearly sought a judgment fixing the boundaries between the parties in accordance with law based on their continuous, uninterrupted and peaceable possession of the disputed *703 property for over thirty years. See LSA-C.C. art. 794. The record contains no evidence that the Kadairs filed a petition asserting any cause of action other than a boundary action; nor does the record contain any pleading otherwise converting the boundary action to another action, including a possessory or petitory action.[11] At the conclusion of Paul Kadair’s trial testimony, he asked the court to honor his thirty years of possession to the fence line and to set the fence line as the new boundary line. After considering and weighing the testimony and evidence, the trial court did precisely that, rendering judgment fixing and reestablishing the boundary line of their property in accordance with its finding that the Kadairs possessed for themselves, and their predecessor in title, up to the fence or boundary line for over thirty years. Because the Kadairs sought to prove their boundary action by acquisitive prescription rather than by title, they were required to prove possession of thirty years without interruption. See LSA-C.C. art. 794.
Thus, although at certain pre-trial stages in the proceedings below the trial court maintained that this was a “possesso-ry action,” (even though filed as | ,3a boundary action), to the extent that the Kadairs were similarly required to prove ownership of the disputed tract by acquisitive prescription of thirty years, pursuant to LSA-C.C. art. 794, in order to prevail, the trial court was correct. To the extent, however, that the defendants contend, based upon comments made by the trial court during the preliminary hearings, that the trial court erred by considering this matter to be a possessory action, and therefore further erred in combining a possessory action with a petitory action, we disagree, given the record before us.
As acknowledged in the jurisprudence, the type of possession necessary to maintain a possessory action is identical in nature to the possession upon which is based acquisitive prescription of thirty years. Chauvin v. Kirchhoff, 194 So.2d 805, 810 (La.App. 1st Cir.1967) (citing Broussard v. Motty, 174 So.2d 246, 248 (La.App. 3rd Cir.1965); Hill v. Richey, 221 La. 402, 418, 59 So.2d 434, 439 (1952); Broussard v. Louisiana Land & Exploration Company, 164 So.2d 84, 93 (La.App. 1st Cir.), writ denied, 246 La. 603, 165 So.2d 488 (1964)). Hence, the possession established by the Kadairs to maintain acquisitive prescription of thirty years pursuant to LSA-C.C. art. 794 in their boundary action would be the same type of possession necessary to sustain a posses-sory action. Here, the trial court found that the Kadairs possessed for thirty years without interruption, within visible bounds, more land than their title called for and fixed the boundary accordingly. Finding that the Kadairs proved acquisitive prescription, the trial court fixed the boundary according to limits established by prescription rather than titles. See LSA-C.C. art. 794. Since the finding of thirty years’ possession is based on the same type of possession for either action, to the extent that there was any confusion with the nature of this action below, we find the error harmless.
| ^Moreover, under both the Louisiana Civil Code and the Louisiana Code of Civil Procedure, the question of ownership can be determined in a boundary action. *704 See LSA-C.C. arts. 792, 794; LSA-C.C.P. art. 3693; Travis v. Lake Superior Piling Company, 401 So.2d 432, 434 (La.App. 1st Cir.), writ denied, 406 So.2d 628 (La.1981). Under LSA-C.C. art. 794, when the boundary action is brought to set a boundary at a visible bound, which has been in existence for more than thirty years and which encloses the land outside of the record title of the person seeking to have the boundary established, proof of ownership is a necessary prerequisite to establishing the boundary. Travis v. Lake Superior Piling Company, 401 So.2d at 435. The proof required under LSA-C.C. art. 794 is the same proof that would be required to prove ownership in a petitory action based on acquisitive prescription of thirty years. Travis v. Lake Superior Piling Company, 401 So.2d at 435; Allen v. Martino, 529 So.2d 90, 93, n. 3 (La.App. 1st Cir.1988); Briggs v. Pellerin, 428 So.2d 1087, 1089, n. 3 (La.App. 1st Cir.1983). Thus, considering our determination herein that the judgment of the trial court set the boundary and established title by acquisitive pre-
scription of thirty years in accordance with LSA-C.C. art. 794, we vacate as erroneous (and unnecessary) the portion of the judgment ordering the defendants to file a petitory action within sixty days pursuant to LSA-C.C.P. art. 3662.[12] As the trial court determined that the Kadairs proved ownership of the disputed tract by acquisitive prescription, a petitory action is not necessary herein.
11fiWe further find no merit to the defendants’ second assignment of error wherein they contend that the Kadairs’ boundary action petition (and resulting judgment) were improper because the petition failed to comply with LSA-C.C.P. art. 3658, which sets forth the necessary requirements to maintain a possessory action.[13] In contrast to a possessory action, a boundary action may be brought by a possessor without regard to the requirements of Article 3658 of the Louisiana Code of Civil Procedure. See A.N. Yiannopoulos, Property § 285, in 2 Louisiana Civil Law Treatise (4th ed.2001);[14] see *705 also Fontenot v. Chapman, 377 So.2d 492 (La.App. 3rd Cir.1979) (for a discussion of the distinction between a possessory, peti-tory, and boundary action).
The defendants further contend that they were aggrieved in that they were not allowed to put on evidence regarding title in defense to the Kadairs’ “possessory action” pursuant to LSA-C.C.P. art. 3657. Again, this argument is misplaced and mis-characterizes the record and proceedings herein. Although the defendants may have had legal title to the disputed property, the trial court was empowered to (and did, in fact) determine that the Kadairs established | ^possession, by acquisitive prescription of over thirty years, of the disputed property up to their fence, so as to prove their boundary action by acquisitive prescription rather than by title and thereby fixed the boundary according to limits established by acquisitive prescription. See LSA-C.C. 794. Thus, we likewise reject this argument.[15]
Further, although not specifically assigned as error on appeal by defendants, after a thorough review of the evidence in this case, we find the trial court’s determination that prescriptive title was conferred upon the Kadairs, based on a factual finding of thirty years of corporeal possession by the Kadairs, is amply supported by the testimony and documentary evidence of record herein. Specifically, the trial court relied on the testimony of Donovan Simmons and Jack Abel, who hunted in the area for thirty years or more, that the fence was upright and continuous; the tes-timony of Lawrence Teddy Martin, who helped Kadair post signs on the property twice as a young child; the expert testimony of Warren Peters that the fence had been in existence for at least fifty years; and the Brown and Butler survey plat, which depicted the fence in question and proved it had been in existence since 1972. In contrast, the trial court specifically found that the testimony from the defendants’ witnesses that the fence was recently constructed or had not been continuously maintained “was purely speculative.” The trial court further found that the testimony of Paul and Melanie Kadair as to their acts of possession since 1974, including, but not limited to, maintaining the fence, posting the property against | ^trespassers, maintaining a road that runs on the south side of the fence by grading it and keeping the roadway clear, hunting, cutting firewood, planting grass, and riding all-terrain vehicles, “was essentially undisputed.”
Considering the factual findings and credibility determinations of the trial court, we decline to disturb the trial court’s determination that the fence in question had been in existence as a fence continuously for more than thirty years prior to the institution of this litigation; that the Kadairs, acting for Herman End-lekofer, their predecessor in title, and for themselves, had possessed the disputed property continuously, peaceably, and without interruption for more than thirty years prior to the institution of this litigation; and that the Kadairs were thereby entitled to judgment “fixing” the north *706 boundary of Tract W by acquisitive prescription according to the fence line as depicted on the Ford survey plat.
Accordingly, we find no merit to these assignments of error.
Challenges to the Ruling Upholding the Servitude (Assignment of Error Number Three)
In their third assignment of error, the defendants contend that the trial court erred in declaring null, without proof of renunciation or abandonment, a dedicated predial servitude of passage and utilities across the northwest portion of Tract W.
A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners. LSA-C.C. art. 646. There must be a benefit to the dominant estate. LSA-C.C. art. 647. The estate burdened with a predial servitude is designated as “servient”; the estate in whose favor the servitude is established is designated as “dominant.” LSA-C.C. art. 646, Revision Comments — 1977, comment (d). Predial servitudes are not attached to a particular person, but are due to anyone who |ishappens to be owner of the dominant estate. LSA-C.C. art. 646, Revision Comments — 1977, comment (c). Thus, a predial servitude is inseparable from the dominant estate and passes with it. See LSA-C.C. art. 650(A). The predial servitude continues as a charge on the servient estate even when ownership changes. LSA-C.C. art. 650(B). However, neither contiguity nor proximity of the dominant and servient estates is necessary for the existence of a predial servitude; it is sufficient that their respective location allows one to derive benefit from the charge on the other. LSA-C.C. art. 648. Moreover, one estate may be subjected to a servitude for the benefit of several dominant estates. LSA-C.C. art. 724.
Nonetheless, there is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate. LSA-C.C. art. 647. The owner of the servient estate is not required to do anything. LSA-C.C. art. 651. His obligation is to abstain from doing something on his estate or permitting something to be done on it. He may be required by convention or by law to keep his estate in suitable condition for the exercise of the servitude due to the dominant estate. LSA-C.C. art. 651.
Predial servitudes may be established by an owner on his estate or acquired for its benefit. The use and extent of such servitudes are regulated by the title by which they are created. LSA-C.C. art. 697. In the absence of such regulation, they are governed by the rules set forth in LSA-C.C. arts. 698 through 774. LSA-C.C. art. 697. Predial servitudes are established on, or for the benefit of, distinct corporeal immovables. LSA-C.C. art. 698.
A right of passage is one example of a predial servitude. See LSA-C.C. art. 699. The servitude of passage is the right established for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent | 19of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate. LSA-C.C. art. 705.
The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply. LSA-C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. LSA-C.C. art. 722. A predial servitude may be established on a certain part of an estate, if that part is sufficiently described. LSA-C.C. art. 727. *707 However, doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the ser-vient estate. LSA-C.C. art. 730.
A predial servitude, such as a servitude of passage, is preserved by the use made of it by anyone, even a stranger, so long as it is used as appertaining to the dominant estate. LSA-C.C. art. 757; Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership, 2001-2812 (La.App. 1st Cir.12/30/02), 839 So.2d 82, 94, writ denied, 2003-0306 (La.4/4/03), 840 So.2d 1219. The use of the language “so long as it is used as appertaining to the dominant estate” has been interpreted by this court as requiring that someone must use the servitude for the purpose of going onto the dominant estate for some legitimate purpose, either to see the owner or for something connected with the use of the dominant estate. See Latour v. Francis, 417 So.2d 485, 489 (La.App. 1st Cir.), writ denied, 420 So.2d 983 (La.1982).
If a predial servitude is not used for ten years, it is extinguished. LSA-C.C. art. 753; Church v. Bell, 2000-0286 (La.App. 1st Cir.3/28/01), 790 So.2d 82, 84 n. 3, writ denied. 2001-1214 (La.6/15/01), 793 So.2d 1247. Prescription for nonuse of an affirmative servitude is measured from the date of its last use. LSA-C.C. art. 754; Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership, 839 So.2d at 94. When the prescription of nonuse ] gois pled, the owner of the dominant estate has the burden of proving that someone has made use of the servitude in the manner contemplated by the grant of the servitude and as appertaining to the dominant estate during the period of time required for the accrual of prescription, such that no consecutive ten-year period of nonuse occurred. See LSA-C.C. art. 764; Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership, 839 So.2d at 94. A partial use of a servitude constitutes use of the whole. LSA-C.C. art. 759. Therefore, the use of a part of the area burdened with a predial servitude interrupts the prescription of nonuse as to the entire area. Claitor v. Brooks, 2013-0178 (La.App. 1st Cir.12/27/13), 137 So.3d 638, 643, writ denied, 2014-0198 (La.4/4/14), 135 So.3d 1182.
The 1972 Brown and Butler survey map of Creekround subdivision, prepared in connection with the development of Creekround subdivision, established and denotes a thirty-foot servitude of passage and utilities that runs across the northwest corner of Tract W.[16] The servitude denoted on the survey map entered Tract W from the property on the west and exited Tract W onto the property north of Tract W. Tract W is owned by the Ka-dairs. The Reserved Tract owned by the Hamptons is adjacent to the servitude. Magnolia Ridge owns the property located to the north and west of Tract W and the Reserved Tract, although the Magnolia Ridge Property is not described or otherwise identified in the subdivision plat.
The particular servitude at issue herein was also recognized in the March 21, 1974 act of sale to Endlekofer from Philip A. Thompson, which provided 121that the tract was “subject to a Thirty (30’) foot servitude of passage and utilities along the *708 northwest corner of said Tract W.” The servitude was subsequently similarly shown in the March 9, 1992 act of sale from Endlekofer to Kadair, which recited that Tract W was “subject to a 30-foot servitude of passage and utilities along the northwest corner.” Both titles contain similar language about Tract W being subject to the thirty-foot servitude of passage and utilities.
Thomas Hampton testified that when he and a co-developer retained Brown and Butler to subdivide the property in 1972, they created and retained ownership of the 1.661 acre Reserved Tract and further created the thirty-foot servitude of passage to access the Reserved Tract. He testified that the Reserved Tract is not a part of Creekround Subdivision, that it is “totally separate” and distinct from the subdivision. The original subdivision survey plat depicts the purpose and location of the servitude, which indicates that it is a charge on Tract W that seemingly benefits the Reserved Tract.
Magnolia Ridge contends that the subdivision plat and subsequent conveyances created a predial servitude of passage in favor of the Magnolia Ridge property. We disagree. As set forth above, the establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of im-movables apply. La. Civ.Code art. 708. Servitudes claimed under title are never sustained by implication; the title creating them must be express as to their nature and extent, as well as to the estate that owes them and the estate to which they are due. Williams v. Wiggins. 26,060 (La.App. 2 Cir. 8/17/94), 641 So.2d 1068, 1072; see also La. Civ.Code art. 730, Revision Comments (c); Bums Ice Factory, Inc. v. Department of Highways of State of Louisiana, 235 La. 158, 175, 182, 103 So.2d 74, 80, 83 (1957) (original hearing and on rehearing).
| ;>i>The subdivision plat and subsequent conveyances do not identify the property owned by Magnolia Ridge as the dominant estate. In fact, the subdivision plat and conveyances do not describe, identify, or reference the property owned by Magnolia Ridge in any manner.
According to Hampton, the 1.661 acre Reserved Tract, which he and a co-developer of the subdivision retained ownership of, was separate and distinct from the subdivision. Moreover, the original subdivision survey plat Deed Restrictions denote that the 150-foot servitude of passage, utilities, and recreation is for the benefit of all of the subdivision owners. The failure to particularize the thirty-foot servitude in the deed restrictions supports the conclusion that it was the intent of the developers to establish a private servitude on Tract W in favor of the Reserved Tract that benefitted the owner of the Reserved Tract and not the other subdivision owners or the public in general.
Accordingly, we find that the trial court did not abuse its discretion to the extent it did not find that Magnolia Ridge is the dominant estate for the disputed servitude. For that reason, we find that Magnolia Ridge has no legal basis to challenge the portion of the judgment decreeing the servitude null because they have failed to demonstrate that the servitude was established for their benefit, the benefit of their ancestors in title, or the general public. Otherwise stated, Magnolia Ridge has failed to establish that the servitude was established in favor of its estate. See LSA-C.C. art. 646, Revision Comments— 1977, comment (d). Thus, we find that Magnolia Ridge’s contention that the servitude is valid because the Magnolia Ridge property is the dominant estate has no merit.
*709 Having determined that the property owned by Magnolia Ridge is not the dominant estate, the only parties in this litigation with an interest in the | ^determination of the validity of the pred-ial servitude are the Hamptons, the owners of the Reserved Tract. However, the Hamptons’ appeal of the trial court’s judgment was dismissed. Consequently, to the extent that the trial court judgment determines the interests of the Hamptons relative to the servitude, that portion of the trial court’s judgment decreeing the servitude invalid is final and not reviewable in this appeal.
For these reasons, we find no merit to this assignment of error.
Answer to Appeal
The Kadairs filed an answer to defendants’ appeal, in accordance with LSA-C.C.P. art. 2138, seeking damages and attorney’s fees for frivolous appeal pursuant to LSA-C.C.P. art. 2164. Courts have been very reluctant to grant damages under this article as it is penal in nature and must be strictly construed. Furthermore, because appeals are favored in our law, penalties for the filing of a frivolous appeal will not be imposed unless they are clearly due. Cavin v. Harris Chevrolet. Inc., 95-1878 (La.App. 1st Cir.5/10/96), 673 So.2d 654, 658. Damages for frivolous appeal will not be awarded unless it appears that the appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates. Guarantee Systems Construction & Restoration. Inc. v. Anthony, 97-1877 (La.App. 1st Cir.9/25/98), 728 So.2d 398, 405, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636. After careful review of the record in this matter, while we do not find merit to all of the defendants/appellants’ claims, we cannot say that this appeal was taken only for the purpose of delay. Moreover, given the zealous representation afforded these defendants by their able counsel, we are unable to find that appealing counsel did not seriously believe in the position he has advocated on appeal. Therefore, damages and attorney’s fees for frivolous ^appeal are not warranted and the relief sought in the Kadairs’ answer to appeal must be denied.
CONCLUSION
For the above and foregoing reasons, the portion of the March 13, 2013 judgment of the trial court, ordering the defendants to file a petitory action within sixty days, is hereby vacated. In all other respects, the judgment is affirmed.
The relief sought in the answer to appeal is hereby denied. Costs of this appeal are assessed one-half each to the parties.
AFFIRMED IN PART, VACATED IN PART; ANSWER TO APPEAL DENIED.

. In response to defendants’ dilatory exception of vagueness and peremptory exception of no cause of action, the Kadairs filed an amended and supplemental petition.

. In their 2011 supplemental petition, the Ka-dairs alleged that they had possessed south of the barbed wire fence line since their 1992 purchase of Tract W, ”[a]t least 19 years ago,” and subsequently for their ancestors in title.

. Louisiana Civil Code article 794 provides that:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.

. At the hearing on the motion for summary judgment, counsel for the defendants reminded the trial court, "[a]s you’ll note from the pleadings, this was a boundary action filed by the Kadairs.” The trial court replied, “No, it wasn’t, it’s a possessory action.” (Emphasis added.)

. Louisiana Code of Civil Procedure article 3657 provides that:
The plaintiff may not cumulate the petito-ry and the possessory actions in the same suit or plead them in the alternative, and when he does so he waives the possessory action. If the plaintiff brings the possesso-ry action, and without dismissing it and prior to judgment therein institutes the peti-tory action, the possessory action is abated.
When, except as provided in Article 3661(1) — (3), the defendant in a possessory action asserts title in himself, in the alternative or otherwise, he thereby converts the suit into a petitory action, and judicially confesses the possession of the plaintiff in the possessory action.
If, before executory judgment in a posses-sory action, the defendant therein institutes a petitory action in a separate suit against the plaintiff in the possessory action, the plaintiff in the petitory action judicially confesses the possession of the defendant therein.

. Plaintiffs' Exhibit 15 is a survey plat prepared by Tobias P. Ford, Jr. dated December 30, 2012. Ford was commissioned by the Kadairs to prepare a survey plat of the property at issue herein.

. This initial subdivision plat, set forth above, established the thirty-foot servitude of passage and utilities.

. In its reasons for judgment, the trial court indicated that Magnolia Ridge had filed a., cross-claim and third-party demand against Coastal Tie & Timber Company, Inc. in warranty and seeking damages. However, those filings are hot contained in the record before us on appeal. Instead, they are contained in a related case also pending on appeal and handed down this date. See Magnolia Ridge Properties, LLC v. Paul A. Kadair, Sr. and Melanie R. Kadair, 2013-2131 (La.App. 1st Cir.7/10/14), 2014 WL 3399066(unpublished opinion). Thus, to the extent that these incidental matters are seemingly being tried sepa- - rately pursuant to LSA-C.C.P. art 1038, the judgment on the main demand herein appears to be final and subject to an immediate appeal pursuant to LSA-C.C.P. art. 1915(A)(4), without the requirement of any LSA-C.C.P. art. 1915(B) designation. Thus, to the extent that the judgment may unnecessarily contain a 1915(B) designation of the judgment as final for purposes of immediate appeal, because the judgment nonetheless appears to be immediately appealable under 1915(A)(4), this court's jurisdiction is proper.

.The record reflects that after the motion for suspensive appeal was filed purportedly on behalf of all defendants, a letter from defendant Thomas Hampton to Judge William Carmichael, dated April 29, 2013, informing the trial court that he and Janelle Bramlett Hampton were no longer represented by Charles E. Griffin, II, was filed into the record. On May 13, 2013, Mr. Griffin filed a motion to withdraw as attorney of record for Thomas and Janelle Hampton, which was granted by the trial court.
The Kadairs subsequently filed a motion to dismiss the appeal as to the Hamptons with this court on October 2, 2013, contending that all legal issues between the Hamptons and the Kadairs had been settled. Although not contained in the record before us on appeal, the Kadairs attached to their motion a copy of a quitclaim executed by the Hamptons on June 21, 2013, as to "their portion of the disputed property at issue” herein, i.e., presumably the "irregular arc.” On January 16, 2014, this court signed an order granting the Kadairs’ motion to dismiss the appeal herein as to the Hamptons.

. See now A.N. Yiannopoulos, Property §§ 336-338, in 2 Louisiana Civil Law Treatise (4th ed.2001).

. In contrast to a petitory action, in a boundary action "the law requires proof from each of the contiguous owners, and the burden is divided.” The court is bound to fix the boundary according to the ownership of the parties. A party that proves ownership of the disputed tract by acquisitive prescription prevails. A.N. Yiannopoulos, Property § 268, in 2 Louisiana Civil Law Treatise (4th ed.2001) (Citations omitted).

. While the judgment of the trial court in the boundary action herein ordered that Magnolia Ridge assert a petitory action within sixty days, we note that the trial court’s written reasons for judgment made no mention of such an order. Nonetheless, a trial court’s written reasons for judgment form no part of the judgment, and where there is a conflict between the judgment and the written reasons, the judgment controls. Delahoussaye v. Board of Supervisors of Community and Technical Colleges, 2004-0515 (La.App. 1st Cir.3/24/05), 906 So.2d 646, 654.

. To maintain the possessory action, the possessor must allege and prove that: (1) he had possession of the immovable property or real right therein at the time the disturbance occurred; (2) he and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by .force or fraud; (3) the disturbance was one in fact or in law, as defined in Article 3659; and (4) the possessory action was instituted within a year of the disturbance. LSA-C.C.P. art. 3658.

.As noted therein:
In contrast with a petitory action which is brought for the recognition of one’s ownership of an immovable or of a real right, the boundary action is brought for the fixing of the boundary between contiguous lands. The court does not merely render a judgment recognizing plaintiffs ownership of a disputed strip of land but also determines the line of separation between the contiguous lands with reference to markers on the ground. One who claims the ownership of a strip of land adjoining the land of a neighbor may bring the petitory action or the action of boundary, or he may cumulate the two. It is true that the burden of proof is different in each of the two actions but when ownership is claimed the proof of ownership is the same.
A.N. Yiannopoulos, Property § 285, in 2 Louisiana Civil Law Treatise (4th ed.2001) (Citations and footnotes omitted; emphasis added).

. In doing so, we note that the record contains the act of cash sale dated December 4, 2009, from Coastal Tie and Timber Company to Magnolia Properties, as well as testimony from: Raymond Banker; his wife, Tammy Banker; his father-in-law, Lynwood Abbott; and his realtor, Patrick Butler, as to their purchases and acts of possession of the disputed property. Although the defendants contend they are aggrieved, they do not identify or specify what other evidence they would attempt to introduce to establish title, if they were given the opportunity to do so. Moreover, and more importantly, the record contains no proffer of such herein.

. The Brown and Butler plat also created and notes a 150-foot servitude of passage, utilities, and recreation on the eastern side of Tract W. Although the Deed Restrictions on the original survey plat provide, with reference to the 150-foot servitude of passage, utilities, and recreation that "[t]he servitude of passage utilities and recreation is to be used by all property owners for passage, utilities, and recreational activities not in conflict with other provisions of these restrictions,” the Deed Restrictions are silent as to the thirty-foot servitude of passage and utilities at issue herein.