STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 1418

ALPHONSE L. FABRE, JR. AND VERONICA S. FABRE

VERSUS

ROBERT L. MANTON, JANET FUNKE MANTON
AND SHIRLEY E. BRAUN MANTON

**Judgment Rendered:** JUN 2 8 2022

\* \* \* \* \* \*

On appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 2017-14606

Honorable Alan Zaunbrecher, Judge Presiding

\* \* \* \* \* \*

Dan A. Smetherman
New Orleans, LA

Counsel for Plaintiffs/Appellants
Alphonse L. Fabre, Jr. and
Veronica S. Fabre

Sarabeth T. Bradley
Covington, LA

Counsel for Defendants/Appellees
Robert L. Manton and Janet
Funke Manton

\* \* \* \* \* \*

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

**GUIDRY, J.**

In this property dispute, plaintiffs, Alphonse L. Fabre, Jr. and Veronica S. Fabre, appeal from a judgment of the trial court rendered in favor of defendants, Robert L. Manton and Janet Funke Manton. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Alphonse L. Fabre, Jr. and Veronica S. Fabre (the Fabres), by act of cash sale dated September 27, 2004, became owners of certain property in St. Tammany Parish, namely property located at 72368 Highway 21 in Covington, Louisiana (hereinafter the Fabre property). Thereafter, on October 5, 2017, the Fabres filed a "PETITION TO FIX BOUNDARY AND FOR DAMAGES," naming as defendants therein, Robert L. Manton, Janet Funke Manton, and Shirley E. Braun Manton, allegedly contiguous landowners.[1] The Fabres claimed the Mantons had trespassed upon, vandalized, and attempted to convert the Fabres' property for their own use. In addition, through their petition, the Fabres prayed for a judgment declaring them as the "true and rightful owners of the entirety of Lots 11 and 12 of Square Four, and the 100' right-of-way, Garland Addition … free on any right of way or other interest … ." The Fabres furthered prayed for a finding that the Mantons' claim to a right-of-way "was not supported" and that the Mantons be taxed with costs of the proceedings including costs "incurred in connection with establishing and placing all boundary markers or other evidence."

The Mantons filed an answer to the Fabres' petition, generally denying the allegations. A trial of the matter was held on November 10, 2020, after which the trial court took the matter under advisement. A judgment in favor of the Mantons,

---

[1] Shirley E. Braun Manton was dismissed from this lawsuit as she did not have an ownership interest in the property.

denying the Fabres' boundary action, was signed by the trial court on March 10, 2021.[2] The Fabres now appeal the judgment.[3]

## ASSIGNMENTS OF ERROR[4]

1. The District Court erred in failing to acknowledge the [Fabres'] right to the ownership under the doctrine of acquisitive prescription. Alternatively, the Appellants are entitled to the property as the limited personal servitude on their property should be terminated as it was abandoned for almost a Century.

2. The Trial Court erred in finding that the Mantons had permission to trespass upon the Right of Way.

3. The Trial Court erred in finding that the Parish of St. Tammany was the owner of the Right of Way.

4. The Trial Court erred in admitting the testimony and survey of Andrew Bell of Kelly McHugh and Associates, Inc.

5. The Trial Court erred in its understanding that this was a boundary action whereas it was a suit for trespass.

---

[2] On December 8, 2020, the trial court issued written reasons for judgment. While Judge Martin E. Coady heard the evidence in this matter and issued written reasons, it appears that Judge Alan Zaunbrecher signed the judgment. Generally, a judgment signed by a judge who did not preside over the trial is not an informality, irregularity, or misstatement which may be corrected by the trial court, but is instead a fatal defect. Employers National Insurance Company v. Workers' Compensation Second Injury Board, 95-1756, p. 5 (La. App. 1st Cir. 4/4/96), 672 So. 2d 309, 312. However, because Judge Coady clearly manifested through his written reasons an affirmative intent to sign a judgment in favor of the Mantons, Judge Zaunbrecher, who seemingly inherited the case, was empowered to sign the judgment, in his capacity as successor judge. See Henry v. Sullivan, 16-1867 (La. 11/18/16), 206 So. 3d 858 (per curiam); see also La. R.S. 13:4209(B)(2).

[3] The Mantons' untimely answer to this appeal was dismissed by this court on March 9, 2022.

[4] The issues addressed in this appeal will be limited to plaintiffs' assignments of error one, four, and five. The judgment herein does not ultimately address who owns the right-of-way. Therefore, assignments of error three and six, whether the rightful owners of the right-of-way are Zellnicker Supply Company and/or the Parish of St. Tammany, will not be addressed. See generally Wooley v. Lucksinger, 09-0571, p. 77 (La. 4/1/11), 61 So. 3d 507, 572 (appellate courts review judgments, not reasons for judgment). In addition, we decline to consider the issue of whether a servitude on the Fabres' property should have been extinguished for nonuse, as we do not find that the issue was pleaded or placed before the trial court. When a particular claim has not been alleged, even if evidence supporting that claim is admitted without objections, if that evidence has relevance to another issue, it cannot be said to have enlarged the pleadings to allow the court to rule on such a claim. Barham & Arceneaux v. Kozak, 02-2325, p. 17 (La. App. 1st Cir. 3/12/04), 874 So. 2d 228, 242, writ denied, 04-0930 (La. 6/4/04), 876 So. 2d 87. Furthermore, as a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. Johnson v. Montoya, 13-1951, p. 6 (La. App. 1st Cir. 5/2/14), 145 So. 3d 418, 422; see also Uniform Rules of Louisiana Courts of Appeal, Rule 1-3. Finally, we note that the judgment makes no finding with respect to assignment of error two, trespassing by the Mantons, and therefore, it will not be addressed.

3

6. The Trial Court erred in finding that the Zellnicker Supply Company was the owner of the Right of Way.

## DISCUSSION

In their first assignment of error, the Fabres contend, essentially, that the trial court erred in failing to acknowledge their ownership of the right-of-way. In addressing this assignment of error, we note that the judgment herein simply denies the Fabres' boundary action. Nevertheless, the question of ownership can be determined in a boundary action. See La. C.C. arts. 792, 794; La. C.C.P. art. 3693; Travis v. Lake Superior Piling Company, 401 So. 2d 432, 434 (La. App. 1st Cir.), writ denied, 406 So. 2d 628 (La. 1981). Proof of ownership is a necessary prerequisite to establishing a boundary. Kadair v. Hampton, 13-1171, p. 14 (La. App. 1st Cir. 7/10/14), 146 So. 3d 694, 704, writ denied, 14-1709 (La. 11/7/14), 152 So. 3d 177.

The court shall render a judgment fixing the boundary between contiguous lands in accordance with the ownership or possession of the parties in a boundary action. See La. C.C.P. art. 3693. The boundary shall be fixed according to ownership of the parties; however, if neither party proves ownership, the boundary shall be fixed according to the limits established by possession. La. C.C. art. 792. When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along those bounds. La. C.C. art. 794. Thus, ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Secret Cove, L.L.C. v. Thomas, 02-2498, p. 4 (La. App. 1st Cir. 11/7/03), 862 So. 2d 1010, 1015, writ denied, 04-0447 (La. 4/2/04), 869 So. 2d 889.

Under the codal provisions on acquisitive prescription, a possessor lacking good faith and/or just title may acquire prescriptive title to land by corporeally possessing a tract for thirty years with the intent to possess as owner. Kadair, 13-1171 at p. 9, 146 So. 3d at 701. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425; Kadair, 13-1171 at p. 9, 146 So. 3d at 701. Thirty years of corporeal possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually corporeally possessed. Kadair, 13-1171 at p. 9, 146 So. 3d at 701; see also La. C.C. arts. 3424, 3425, 3426, 3476, 3486, and 3487.

For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. Marcello v. Jo-Blanche Corporation, 20-1113, p. 8 (La. App. 1st Cir. 6/4/21), 330 So. 3d 632, 639, writ denied, 21-01666 (La. 1/19/22), 331 So. 3d 330. The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. Marcello, 20-1113 at p. 8, 330 So. 3d at 639.

Under La. C.C. arts. 794 and 3442, a title holder may acquire more land than his title calls for by "tacking" on to the possession of his ancestor in title. Marcello, 20-1113 at p. 8, 330 So. 3d at 639. Under La. C.C. art. 794, the privity of title between the possessor and his ancestor in title need not extend to the property to which the possessor asserts prescriptive title; under this article, the juridical link, or written instrument that passes to the possessor from his ancestor in title need not encompass or include the particular property to which the

5

possessor claims prescriptive title. Marcello, 20-1113 at pp. 8-9, 330 So. 3d at 639.

Whether a party has possessed property for purposes of thirty year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Secret Cove, L.L.C., 02-2498 at p. 6, 862 So. 2d at 1016. Additionally, a boundary location is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error.[5] Secret Cove, L.L.C., 02-2498 at p. 6, 862 So. 2d at 1016. The party claiming acquisitive prescription bears the burden of proof. See La. C.C. art. 794; Marcello, 20-1113 at p. 9, 330 So. 3d at 639.

In the present matter, the Fabres filed a petition to fix the boundary and for damages, asserting ownership of disputed property, a right-of-way. At the trial on the merits, Mr. Fabre claimed he owned the right-of-way in its entirety—including the disputed portion of the right-of-way outside of Lots 11 and 12. Mr. Fabre testified that he had taken care of the disputed property "ever since" he purchased it in 2004. According to Mr. Fabre, "[his] whole chain of title says [he] own[s] the right of way." Mr. Fabre further testified that Mr. Manton had been trespassing on his property for 15 years.[6]

In addition, Mr. Fabre admitted that the survey attached to his act of cash sale, the Bonneau Survey, showed he owned only a portion of the right-of-way (the portion across Lots 11 and 12). Mr. Fabre testified, however, that he believed the

---

[5] Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Jackson v. Tulane Medical Center Hospital and Clinic, 05-1594, p. 5 (La. 10/17/06), 942 So. 2d 509, 512. To reverse a fact finder's determination, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding and further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. Jackson, 05-1594 at p. 5, 942 So. 2d at 512-513. The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. Jackson, 05-1594 at p. 5, 942 So. 2d at 513.

[6] Mr. Fabre claimed that Mr. Manton erected a fence on the disputed property, and tore down the Fabres' fence, among other things.

Bonneau Survey was incorrect. According to Mr. Fabre, the 100 foot right-of-way was "left out" of his property description when the property was transferred to him.[7] Mr. Fabre stated that he and his wife occupied the right-of-way for 15 to 16 years. Their ancestors in title occupied it back to 1938.

Samuel Z. Scandaliato,[8] who was hired by the Fabres to survey their property, testified that the Fabres' property description included the disputed portion of the right-of-way. According to Mr. Scandaliato, every sale of the property included "the lot plus the right of way." Additionally, Mr. Scandaliato testified that a map produced by St. Tammany Parish indicated that the right-of-way belonged to the Fabres.

Mr. Scandaliato testified that, in producing his boundary survey, he relied upon title research given to him by Mr. Fabre, notes from his crew, and old maps and surveys—in particular, the Bonneau, Cunningham, and Hendron surveys. On cross examination, Mr. Scandaliato admitted that his survey measurements deviated from the measurements in each of the surveys on which he relied. The Bonneau Survey, with boundary measurements including 406 feet between Lots 10 and 11 and 395.9 feet between Lots 12 and 13, was wrong, according to Mr. Scandaliato. Regarding the Cunningham Survey, with boundary measurements of approximately 415 feet between Lots 10 and 11 and 405 feet between Lots 12 and 13, Mr. Scandaliato stated, "[W]hat makes that survey wrong is that there is an extra piece that belongs to Fabre on Lot Number 12 that doesn't even show on that survey. That's why that survey is incorrect."

---

[7] According to his testimony, Mr. Fabre understood that the survey produced by the consultant he hired, Samuel Z. Scandaliato with SZS Consultants, Inc., was the only survey in existence showing the Fabres owned any portion of the right-of-way outside of Lots 11 and 12.

[8] Mr. Scandaliato owned SZS Consultants, Inc., whose boundary survey was admitted into evidence.

Mr. Scandaliato opined that the lines between Lots 10 and 11 have a boundary of 524 feet. Mr. Scandaliato admitted he did not perform any abstracting or title research. Mr. Scandaliato also testified that he did not did not visit the subject property.

Mack Joseph Lobrano, the right-of-way coordinator for St. Tammany Parish, stated that he was familiar with the lots in question and the right-of-way granted in 1908. According to Mr. Lobrano, St. Tammany Parish "could never confirm clear title to the right of way."

Drew Bell, the court appointed surveyor,[9] issued a report wherein he stated the following:

> According to the deeds of the properties and the evidence surveyed in the field, it does not appear that Fabre or Manton share a common boundary line. There appears to be a substantial gap between the two properties of where the old railroad right-of-way existed and it is unclear as to who owns this property at this time.

According to Mr. Bell, the Bonneau survey, which was attached to the Fabres' act of cash sale, represents, "approximately," what he found in his survey. Mr. Bell stated that nothing in the Fabres' property description gave any ownership of the right-of-way to Mr. Fabre. He further explained that, with the exception of the survey produced by Mr. Scandaliato, "all of the surveys and maps created from 1905 starting with the Cunningham map to present, all have been approximately 402 or 406 feet up to 415 feet between Lots 11 and 10," indicating that a common boundary does not exist between the parties, and that the Fabres' property description does not include the entirety of the right-of-way.

---

[9] Mr. Bell, a surveying supervisor with Kelly McHugh & Associates, Inc., testified by video deposition. According to Mr. Bell's testimony, Kelly McHugh & Associates was appointed by the court to determine: 1) whether the parties shared a boundary line; 2) the location of the properties as they relate to one another; and 3) the status (existence and/or ownership) and location of the right of way.

Mr. Bell explained that he reached his conclusions by tracing titles to figure out what each party owned and researching adjacent properties. Mr. Bell also noted that he performed multiple field work visits to the properties involved, including the surrounding properties.

Mr. Manton testified that he received permission from the parish to use the right-of-way. Mr. Manton stated that he did not claim ownership of the right-of-way, "only usage." According to Mr. Manton, he does not share a common boundary with Mr. Fabre.

After reviewing the evidence, the trial court denied the Fabres' boundary action, apparently finding no ownership by the Fabres of the disputed property, and thus, no common boundary between the parties.[10] Having reviewed the record, we cannot say the trial court's determination is manifestly erroneous or clearly wrong. To establish a common boundary, the Fabres had the burden of proving ownership of the disputed land by acquisition from a previous owner or by acquisitive prescription. See Marcello, 20-1113 at p. 16, 330 So. 3d at 643-644; see also La. C.C. art. 792 and La. C.C.P. art. 3654. The Fabres, however, did not prove ownership of the disputed property by title.[11] No evidence was introduced at trial to establish that the Fabres' ancestors in title actually possessed the disputed property, or more land than their title called for, without interruption. And it is clear that the Fabres did not possess the disputed property for 30 years to prove ownership by their own acquisitive prescription, as Mr. Fabre testified that the

---

[10] A boundary action is brought by the owner or possessor of one of two (or more) contiguous tracts of land to compel the fixing of the boundary between the adjacent tracts of land. Marcello, 20-1113 at p. 7, 330 So. 3d at 638; see also La. C.C. arts. 785-787; La. C.C.P. arts. 3691-3693.

[11] We find no error in the trial court's adoption of the Fabres' property description as interpreted by the court appointed surveyor, Mr. Bell. Where a fact-finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Kadair, 13-1171 at p. 11, 146 So. 3d at 702.

9

property was owned for only 15 to 16 years.[12] Given the aforementioned, we find no error in the trial court's implicit finding that the Fabres failed to prove ownership of the disputed property from a previous owner or by acquisitive prescription. We, thus, find no merit in the assignment of error.

We further find no merit in the plaintiffs' fourth assignment of error, wherein they contend the trial court erred in admitting the testimony and survey of Mr. Bell, the court appointed surveyor. The Fabres objected to the findings and opinions of Mr. Bell. In addition, counsel for the Fabres, at trial, objected to the testimony of Mr. Bell, arguing that the Fabres were denied assistance of counsel.

A trial court has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible. Louisiana State Bar Association v. Carr and Associates, Inc., 08-2114, p. 17 (La. App. 1st Cir. 5/8/09), 15 So. 3d 158, 171, writ denied, 09-1627 (La. 10/30/09), 21 So. 3d 292. The effect and weight to be given expert testimony is within the broad discretion of the trial court. Louisiana State Bar Association, 08-2114 at p. 17, 15 So. 3d at 171. The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its discretion. Morgan v. State Farm Fire and Casualty Company, Inc., 07-0334, p. 9 (La. App. 1st Cir. 11/2/07), 978 So. 2d 941, 946.

In addition, where a party asserts the trial court erred in permitting evidence, we must consider whether the challenged evidentiary ruling was erroneous and whether the error prejudiced the defendant. If not, reversal is not warranted. Giavotella v. Mitchell, 19-0100, p. 12 (La. App. 1st Cir. 10/24/19), 289 So. 3d 1058, 1069, writ denied, 19-1855 (La. 1/22/20), 291 So. 3d 1044; see also La. C.E.

---

[12] It also appears that any possession of the disputed property by the Fabres was not peaceable or unequivocal, as Mr. Fabre testified that Mr. Manton had been "trespassing" on the property for 15 years.

10

art. 103. The party challenging the trial court's evidentiary ruling bears the burden of proving the error had a substantial effect on the outcome of the case when compared to the record in its totality. Giavotella, 19-0100 at p. 12, 289 So. 3d at 1069.

Having reviewed the evidence and expert testimony herein, we find no abuse of the trial court's discretion in admitting the testimony of Mr. Bell. The challenged findings offered by Mr. Bell fell within the purview of Mr. Bell's knowledge and experience, assisting the trial court with the factual determinations in the case. See La. C.E. art. 702. Further, we do not find that the Fabres were blindsided by the testimony of Mr. Bell, or that the testimony prejudiced the Fabres, especially given the Fabres' own expert witness, Mr. Scandaliato. While we are cognizant of the fact that Mr. Fabre was not represented by counsel at the time of Mr. Bell's deposition testimony,[13] Mr. Fabre, a then self-represented litigant, was nevertheless present at the deposition of Mr. Bell, questioning the witness and objecting to the witness' testimony. Therefore, this assignment of error lacks merit.

Finally, in regard to the fifth assignment of error, which essentially asserts that the trial court, in its ruling, failed to understand the distinction between a boundary action and an action for trespass, we find no merit. As expressed herein, after filing a petition to *"fix the boundary"* and praying that the Mantons be taxed with the costs of the proceedings, including costs incurred *"in connection with establishing and placing all boundary markers,"* the trial court apparently found no common boundary between the parties. We have found no manifest error in the trial court's determination.

---

[13] There is no dispute that counsel for the Fabres was not enrolled at the time of the deposition.

Furthermore, title to land is the pivotal issue in an action for trespass, and a plaintiff who brings a trespass action bears the burden of proving his ownership. Chauvin v. Shell Oil Company, 16-609, p. 6 (La. App. 5th Cir. 10/25/17), 231 So. 3d 903, 907, writ denied, 17-1985 (La. 1/29/18), 233 So. 3d 607. The plaintiffs herein failed to carry their burden to establish ownership of the property. We therefore find no merit in the assignment of error.

## CONCLUSION

For the above and foregoing reasons, the trial court's March 10, 2021 judgment denying the Fabres' boundary action is affirmed. All costs of this appeal are assessed to the plaintiffs/appellants, Alphonse L. Fabre, Jr. and Veronica S. Fabre.

**AFFIRMED.**