CARAWAY, J.
h This action was filed to establish the boundary line between two tracts and determine ownership of a disputed .7592 acres along the common property line. At the filing of this action, defendants were in possession of the disputed tract, having constructed a new boundary fence before plaintiff’s purchase of the land. After a bench trial, the trial court determined that plaintiff failed to prove her ancestor-in-title’s intent to possess the disputed tract as owner. The boundary was fixed by the *756 judgment along the surveyed ideal boundary which was the location where defendants’ new fence had been built. The plaintiff appeals the trial court’s judgment. We affirm.

Facts

The property that plaintiff, Lou Taylor, now owns is referred to as the Pesnell tract. Evidence was presented to indicate that the Pesnells (or Pesnell heirs) owned the tract from 1940 until 2006. The adjoining property owned by the defendants, J.D. and Doris Dumas (hereinafter the “Dumases”), is generally referred to as the Spencer tract. Evidence indicated that the Spencer family owned their tract from about 1941 until 1997.
The two tracts share a common boundary in which the southern border of the Pesnell tract is the northern boundary of the Spencer tract and is approximately 560 feet in length (hereinafter the “Ideal Boundary”). There is a fence or remnants of an old fence (hereinafter “Old Fence”) that was constructed and encroaches on the northern boundary of the Spencer 12tract taking in an area of .7592 acres (hereinafter the “Disputed Tract”). At the location of the Old Fence, the boundary between these two tracts was surveyed to be approximately 590 feet from a road on the west to the corner of both properties on the east. Neither party introduced evidence regarding the owner of the land who built the Old Fence or when that occurred.
The Dumases purchased the Spencer property on November 22, 2000. In April 2006, Frank Miller, a surveyor, completed a survey for the Dumases. Miller noted the existence of old fence fragments and a change in timber on his survey along that line. Miller placed the Ideal Boundary approximately 45 feet north of the Old Fence on the west side of the tract at the road and the line ran easterly to a point approximately 80 feet north of the Old Fence. Dumas constructed a new fence on the Ideal Boundary (hereinafter the “New Fence”) in August 2006.
Taylor acquired the Pesnell tract on March 23, 2007, from Myles Thibodeaux and Lee Savoy. Thibodeaux and Savoy had purchased the Pesnell tract from the Pesnell heirs in March 2006 and were the owners when the New Fence was built. At the time of Taylor’s 2007 acquisition, the New Fence had been constructed for seven months. As a result, Taylor never took possession of the Disputed Tract south to the Old Fence.
Soon after purchasing the Pesnell tract, Taylor hired a surveyor, Troy Lowe. Lowe’s preliminary survey discovered the existence of the Old Fence and noticeable change in timber on the other side of the New Fence. Ultimately, as found by the trial court, Lowe did not perform a complete survey, and the Ideal Boundary found by the Miller survey is the proven Lcommon boundary established from the written descriptions in the deeds to the Spencer and Pesnell tracts.
Taylor wrote the Dumases on October 25, 2007, in order to inform them of the encroachment caused by their New Fence. Taylor waited until May 15, 2009, however, to file a petition to establish her ownership of the Disputed Tract. She alleges that the Old Fence was established by her ancestors-in-title as the southern boundary of the Pesnell tract with over 30 years of continuous and uninterrupted possession before the construction of the New Fence.
A bench trial for the case was held. At the trial, Taylor and two others from the community testified that the Old Fence was the recognized boundary between the Pesnell and Spencer tracts for over 30 years. In contrast, the Dumases presented a witness from the community who disputed the existence of the Old Fence. *757 Taylor admitted that her deed describes her southern Ideal Boundary as being the New Fence, not the Old Fence.
Taylor introduced photos at the trial that show an old and somewhat dilapidated barbed wire fence (some of the fence posts appear to have fallen over), a fire lane and a change in timber. Everyone concedes that the Old Fence still exists and extends all but 50 feet across the approximately 590-foot boundary. Newton Kavanaugh is Taylor’s brother and a former lessee of the Spencer tract from 1980 until 1993. Kava-naugh stated that the northern boundary line of his lease was the Old Fence. He also testified that the fire lane was created in 1993 so that the Spencers could plant pine trees.
[4The surveyor, Frank Miller, testified that he marked things on his plat that could have an “adverse impact” on the property on the Dumases’ survey. According to Miller, he recommended that the Dumases contact an attorney before building a New Fence due to the presence of the Old Fence and timber change.
Taylor introduced the depositions of Thi-bodeaux and Savoy at the trial. Savoy purchased the property so that his grandson, Thibodeaux, would have a place to live while attending Louisiana Tech. Thibo-deaux and Savoy denied any discussions with Dumas regarding a survey or New Fence. Yet, when questioned regarding a fence, Thibodeaux stated, “I don’t remember a fence. I think there was a newer fence there.” They both stated that they never examined the property line. Thibo-deaux admitted that he only spent a couple of nights at the property. Although neither was aware of the Disputed Tract and Old Fence, they both stated that they only bought and sold property according to the description in their deed.
J.D. Dumas testified on his own behalf at the trial. In contrast to Thibodeaux’s deposition, Dumas testified that:
I actually visited with Mr. Myles Thibo-deaux and told him what my intentions were. He indicated that he had seen the survey crew out there doing the marking of the trees with the red paint, etc_ He indicated that ... he would trust this surveyor since he was so well known.
Additionally, Dumas admitted that an old fence runs across his property, but he stated that it fails to traverse the entire boundary. Dumas admitted that he and Miller walked the “fence line together,” but he did not remember Miller’s precautionary advice regarding the situation. Dumas testified that |5he received quitclaim deeds from both Thibodeaux and Savoy five days before the trial. He recalled paying Savoy $500 for his quitclaim deed.
The trial court ultimately held for the Dumases and set the boundary according to the Ideal Boundary from the parties’ deeds. The court held that:
Plaintiff submitted no testimony and/or evidence from her predecessors in title or from any other prior owner(s) of the Taylor Tract establishing that any owners of the Taylor Tract took adverse corporeal possession of the Disputed Tract with the intent to own. While Track Kavanaugh testified that he saw someone on the Pesnell property mow up to the old fence, it was not established who performed this act, which act, without more, failed to establish adverse corporeal possession of the Disputed Tract. Plaintiff presented no evidence regarding who built the old fence or the purpose for which the old fence was built.
The trial court noted that the Disputed Tract was not described or contained in *758 Taylor’s deed. Additionally, she has never had possession of the Disputed Tract. Therefore, Taylor failed to prove ownership by title or acquisitive prescription. Taylor appeals this judgment.

Discussion

While Taylor’s petition is captioned like a petitory action for the recognition of her ownership to the Disputed Tract, its fact allegations reveal that a boundary dispute exists between two adjacent owners. The description of the competing deeds when plotted reveal one common line which the undisputed Miller survey determined on the ground as the location of the New Fence. However, Taylor claims ownership beyond that Ideal Boundary to the Old Fence, an additional .7592 acres. The court’s final judgment ultimately fixed the boundary between the two owners at the New Fence, rejecting Taylor’s claim to the Disputed Tract.
|fiThe substantive and procedural provisions for a boundary action dispute directs the court to fix the boundary between the contiguous tracts on the basis of either the ownership or possession of the parties. La. C.C. art. 792 and La. C.C.P. art. 3693. Regarding these two legal concepts for disputed property along a boundary, Civil Code Article 792 states that “if neither party proves ownership, the boundary shall be fixed according to limits established by possession.”
From the record, it is undisputed that between the time of the construction of the New Fence by the Dumases in August 2006 until the filing of this action in 2009, the Dumases had exercised actual corporeal possession of the Disputed Tract. The possession and right of possession that Thibodeaux and Savoy may have had in August 2006 was disturbed, interrupted, and lost by the eviction for over one year that resulted by the Dumases’ action in constructing the New Fence. La. C.C. arts. 3433 and 3434. Possession was established in the Dumases.
The legal concepts of ownership and possession expressed in these articles for the boundary action produce the same effects as in other real actions. The relationship between a party in possession and the adverse party claiming ownership and the applicable burden of proof are the same for the boundary action which is a specific proceeding within the title of the Code of Civil Procedure for real actions. See Book VII, Title II, Chapter 2 of the Louisiana Code of Civil Procedure. First, Civil Code Article 3423 elevates the party in possession in a real action, as follows:
A possessor is considered provisionally as owner of the thing he possesses until the right of the true owner is established.
17This principle shifts the burden of proof to the adverse party who is not in possession but claiming ownership. That burden for the boundary and other real actions is best expressed in Article 3654 of the Code of Civil Procedure, in pertinent part, as follows:
[T]he court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription.
La. C.C.P. art. 3654; Loutre Land and Timber Co. v. Roberts, 10-2327 (La.5/10/11), 63 So.3d 120.
Thus, under the effects of the above principles reflected in Civil Code Article 792 and La. C.C.P. art. 3654, Taylor had the burden of proving her ownership to the Disputed Tract as acquired either from (1) a previous owner or (2) through her own *759 acquisitive prescription by her actual possession extending before the time of the New Fence. It is obvious that Taylor never actually possessed the Disputed Tract at any time so that she could not prove ownership by her own acquisitive prescription of 10 or 30 years. Instead, she claims that the possession of her predecessors-in-title amounted to ownership of the Disputed Tract by their adverse possession over 30 years. Thus, under La. C.C.P. art. 3654, she claims to have proven that she “acquired ownership from a previous owner.”
For our analysis, even if we assume that Taylor’s evidence established actual corporeal possession of the Disputed Tract by the Pesnells, Thibodeaux and Savoy for over 30 years and that the trial court’s fact determination of their lack of intent to own was manifestly erroneous, |Rwe nevertheless affirm the trial court’s ruling. Because of the interruption of Thibodeaux and Savoy’s possession in August 2006, Taylor failed to demonstrate a juridical link to ownership of the Disputed Tract and therefore did not prove she “acquired ownership from a previous owner” in 2007.
Various provisions of the Civil Code address the transfer of ownership of an immovable:
La. C.C. art. 1839: A transfer of immovable property must be made by authentic act or by act under private signature. La. C.C. art. 2440: A sale or promise of sale of an immovable must be made by authentic act or by act under private signature.
La. C.C. art. 2477: Delivery of an immovable is deemed to take place upon execution of the writing that transfers its ownership.
Central to this written act requirement for the transfer of ownership of an immovable is the necessity for a sufficient property description identifying the tract. Nitro Energy, L.L.C. v. Nelson Energy, Inc., 45,201 (La.App.2d Cir.4/14/10), 34 So.3d 524. In Hargrove v. Hodge, 9 La.App. 434, 121 So. 224, 225 (La.App. 2d Cir.1928), it was determined that the property description in the instrument must be such that the property intended to be conveyed could be located and identified, and the general rule is that the description must fully appear within the four corners of the instrument itself, or that the instrument should refer to some map, plat, or deed as a part of the description, so that the same may be clear. It is not permissible to indulge in speculation when interpreting deeds to real property.
Taylor’s March 23, 2007 deed from Thi-bodeaux and Savoy is a particular title and juridical link conveying ownership. It particularly | ¡^described the Pesnell Tract with a metes and bounds description that extended only to the Ideal Boundary. There were no omnibus expressions within the deed, suggesting any additional land. In addition to her particular title, the facts on March 23, 2007, revealed that a constructed boundary, the New Fence, extended precisely along the Ideal Boundary. Thus, from the standpoint of the juridical link of Taylor’s written deed, she cannot show that she acquired ownership to the excess Disputed Tract from Thibodeaux and Savoy.
The rule for transfer of the ownership of an immovable by a particular title is not, however, without exception. In a boundary dispute setting, Article 794 of the Civil Code provides as follows:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title *760 called for, the boundary shall be fixed along these bounds.
The important last sentence of Article 794 is a special rule for tacking of possession in boundary actions. As a general rule, possession is transferable by universal title or by particular title. La. C.C. art. 3441. However, as an exception, without a particular title or juridical link, “tacking is permitted in boundary actions within the limits of Article 794.” Revision Comment (d), La. C.C. art. 3442.
In Loutre Land and Timber, supra, the Louisiana Supreme Court applied Article 794’s possession tacking principle to also encompass the conveyance of ownership of an immovable without a particular title. In the Loutre Land boundary dispute, Loutre Land, like Taylor, purchased the land | mfrom a predecessor-in-title who had possession of the tract for over 30 years within visible bounds for more land than described in the predecessor’s title. Thus, at the time of the sale, Loutre Land’s predecessor had both possession and ownership by acquisitive prescription. The excess property extended for 15 acres to an established old fence line that encroached upon the defendant’s adjacent land to the south. As a critical distinction to the present case, at the time of Loutre Land’s acquisition deed, there was no boundary fence along the ideal property line north of the old fence so that the existing possession of Loutre Land’s predecessor to the 15 acres was transferred to Loutre Land. The question presented was whether the transfer of the disputed 15 acres without a particular title was a sufficient transfer of the ownership of that land, and the court concluded as follows:
Thus, we conclude that La.Civ.Code art. 794 does not require particular title to the Disputed Tract in order to convey the accompanying acquisitive prescription rights to that land. Rather, the continued possession of the land to the fence’s boundary by the Succession and Loutre for over thirty years mandates a finding that Loutre owns the Disputed Tract. In fact, because the law operates in favor of Loutre in the absence of a particularized description of the land, the Act of Sale would have required a clause excluding the Disputed Tract if that had been the parties’ intent.
Id. at 126. (Bold emphasis added.)
Loutre Land confirms therefore that the special tacking rule of possession of Article 794 also conveys ownership where acquisitive prescription has previously accrued. Nevertheless, it operates as a transfer of ownership without a particular title to the excess land so long as the facts on the ground allow for the transfer of possession to that land. In the language of Article 794, Loutre Land and its ancestors-in-title possessed the [ndisputed tract without interruption and within the visible bounds which existed on the date of Loutre Land’s deed. In contrast, at the time of Taylor’s deed, Thibodeaux and Savoy had already been evicted from their possession of the Disputed Tract, and Taylor never possessed “more land than ... called for” in her deed. Moreover, an examination of the property on the ground on the date of Taylor’s sale would have confirmed to her that the Dumases had constructed the New Fence as a boundary. Therefore, without Taylor’s demonstration of an acquisition comporting with the special tacking rule of Article 794, she did not prove that she acquired ownership of the Disputed Tract from Thibodeaux and Savoy.
Regarding any ownership rights of Thi-bodeaux and Savoy, the record reveals that they first tolerated the surveying of the Ideal Boundary and the Dumases’ constructing of the New Fence on that line. They later effectively confirmed the New *761 Fence as the boundary when they quit-claimed to the Dumases any ownership of the Disputed Tract by deed with a particular description of the Spencer tract, including the .7592 acres. Accordingly, from the rules of possession and ownership which govern the fixing of a boundary, the trial court’s ruling in this case is affirmed.

Conclusion

Based on the foregoing, the trial court’s judgment is affirmed. The boundary was correctly fixed at the New Fence and Ideal Boundary. Costs of this appeal are assessed to appellant.
AFFIRMED.
STEWART, J., dissents with written reasons.