# STATE OF LOUISIANA

# COURT OF APPEAL

## FIRST CIRCUIT

*******

## 2020 CA 1113

## STEVEN J. MARCELLO AND ROSALIE C. MARCELLO

## VERSUS

## JO-BLANCHE CORPORATION

JUDGMENT RENDERED: **JUN 0 4 2021**

*******

Appealed from the
Seventeenth Judicial District Court
In and for the Parish of Lafourche • State of Louisiana
Docket Number 136720 • Division D

The Honorable Christopher J. Boudreaux, Judge Presiding

*******

Margaret A. Mentz
Kent A. Lambert
Katie L. Dysart
New Orleans, Louisiana

COUNSEL FOR APPELLANTS
PLAINTIFFS—Steven J. Marcello
and Rosalie C. Marcello

Jerald P. Block
Sarah M. Lambert
Thibodaux, Louisiana

COUNSEL FOR APPELLEE
DEFENDANT—Jo-Blanche
Corporation

*******

**BEFORE: GUIDRY, MCCLENDON, AND WELCH, JJ.**

**WELCH, J.**

This is an appeal of a judgment that resolved a boundary dispute in favor of Jo-Blanche Corporation on the basis of title ownership, setting the boundary according to the 2020 survey of James M. Templeton, following a bench trial. We affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

At issue in this litigation is the boundary between two adjacent properties in Lafourche Parish along Highway 308: the Marcello property (773 Highway 308) and the adjacent Jo-Blanche property (775 Highway 308). The parties refer to the Jo-Blanche property as the "down the bayou" tract, while the Marcello property is the "up the bayou" tract. A drainage ditch runs along the property line between the adjacent properties; however, the ditch is not a straight line, and therefore does not follow the straight property line for the entire length of the property. The Marcellos have alleged that the boundary should be fixed according to acquisitive prescription at the down the bayou side of the ditch. Jo-Blanche argues that the boundary line should be fixed at the up the bayou side of the ditch, in accordance with a survey referenced in the Marcellos' title.

*Background*

Joseph Marcello and his wife, Blanche Marcello, purchased certain immovable property in 1922, most of which is dedicated to sugar cane cultivation. After the death of Joseph and Blanche, their six children inherited the immovable property. In 1986, these same six children formed the Jo-Blanche Corporation ("Jo-Blanche"), and the immovable property transferred at that time from the children to the corporation.

In March 1990, plaintiffs—Steven J. Marcello and Rosalie C. Marcello—

---

[1] We borrow from our two earlier opinions in this matter, **Jo-Blanche Corp. v. Marcello**, 99-1972 (La. App. 1st Cir. 11/8/00) (unpublished), and **Jo-Blanche Corp. v. Marcello**, 2002-1045 (La. App. 1st Cir. 5/9/03) (unpublished).

purchased a tract of immovable property adjacent to the Jo-Blanche property. Their deed referenced a 1973 survey by Edward C. McGee, Jr. The McGee survey set a linear boundary between the two properties that was similar to, but not the same as, the drainage ditch. After their purchase of the property, the Marcellos had a survey performed in February 1993 by Charles L. McDonald, at which time the McDonald survey crew placed markers every 500 feet along the property line on the down the bayou side of the drainage ditch. Steven placed larger markers in the same spots to make the property line more visible.

*1996 Possessory Action*

Between 1993 and 1996, Jo-Blanche and the Marcellos met at least twice to discuss the boundary line. After one such meeting, the Marcellos began erecting a fence on June 5, 1996, on the middle "pasture" portion of their property that extended approximately six feet onto the down the bayou side of the ditch, which Jo-Blanche argued it possessed. In response, Jo-Blanche filed a petition to be restored to possession and an application and motion for temporary restraining order and preliminary injunction. The trial court granted a temporary restraining order that prohibited the Marcellos from constructing a fence or changing the drainage on the Jo-Blanche property.

Thereafter, a bench trial was held on March 30, 1999, at which time the parties stipulated that possession of only the middle portion of the property was at issue.[2] The trial court dismissed Jo-Blanche's demand, finding that the placement of survey markers along the property line by the Marcellos in 1993 interrupted Jo-Blanche's peaceful possession; therefore, the requisites of the possessory action

---

[2] The parties stipulate that this court's prior appeals concerned only the middle portion of the adjacent properties. Our prior opinions, however, set forth that the parties stipulated that possession of only the *back portion* of the property was at issue. **Jo-Blanche Corp. v. Marcello**, 99-1972, p. 2 n.2 (La. App. 1st Cir. 11/8/00) (unpublished). The parties clarify in this appeal that the prior stipulation set forth that possession of only the middle portion of the adjacent properties was disputed because the fence erected by the Marcellos was built only in the pasture area, which is in the "middle portion" of the property.

3

were not met because Jo-Blanche's petition was not filed within one year of the 1993 placement of the survey markers.

Jo-Blanche appealed to this court. In a 2000 opinion, we reversed the trial court's judgment and remanded the case for further proceedings, finding that a disturbance in fact of Jo-Blanche's peaceful possession did not occur until 1996, when the Marcellos began erecting the fence; thus, Jo-Blanche's petition was timely filed within one year of the disturbance. **Jo-Blanche Corp. v. Marcello**, 99-1972, pp. 8-9 (La. App. 1st Cir. 11/8/00) (unpublished).

Following remand, the trial court rendered judgment in favor of Jo-Blanche, ordering that Jo-Blanche be maintained in its possession of the disputed middle portion of the property, "which is that property located downstream of the drainage ditch identified by the witnesses P.J. Acosta and Bobby Acosta." The trial court also enjoined the Marcellos from constructing a fence or changing the drainage on the property possessed by Jo-Blanche. The Marcellos appealed to this court. In a 2003 opinion, we affirmed the trial court's judgment on remand. **Jo-Blanche Corp. v. Marcello**, 2002-1045, pp. 6-8 (La. App. 1st Cir. 5/9/03) (unpublished). Thereafter, the Marcellos removed the fence from the property possessed by Jo-Blanche in the middle section and rebuilt the fence in the center of the drainage ditch. The 1996 possessory action did not resolve any questions of ownership, fix any boundary, nor adjudicate any real rights as to the entirety of the adjacent properties.

*2018 Boundary Action*

The parties remained in peaceful possession of their respective properties until 2018, when Jo-Blanche advertised its property for sale.[3] The Marcellos

---

[3] A sale of the Jo-Blanche property to development group CBJ Land, LLC ("CBJ") was scheduled for October 5, 2018. Steven Marcello's brother, William Brian Marcello—from whom Steven is estranged—is a member of CBJ. Steven and William are also both board members of Jo-Blanche.

4

became concerned over unresolved questions regarding the boundary between the adjacent properties. On September 28, 2018, the Marcellos filed a "Petition for Declaratory Judgment and/or Boundary Action," seeking a judgment fixing the drainage ditch as the boundary of the entirety of the adjacent properties based on thirty years acquisitive prescription.[4] The Marcellos alleged that since this court rendered judgment in the prior appeal, the parties have used the drainage ditch as the boundary between the two properties. The Marcellos prayed for judgment confirming the ownership of the respective properties in accordance with this court's prior opinion "regarding the parties' possessory rights…as identified on the Acosta Drawing." The Marcellos prayed for judgment establishing their property line in accordance with this court's prior opinion and the Acosta Drawing. The Marcellos later hired Michael P. Blanchard with Acadia Land Surveying, LLC, who prepared a survey of their property on August 19, 2019.

Jo-Blanche opposed the Marcellos' claims, arguing that the drainage ditch is not the proper boundary as to the entire property. Jo-Blanche contended that the boundary line should track "title" records, and more specifically, a July 30, 2020 survey prepared by James M. Templeton with David A. Waitz Engineering and Surveying, Inc. The Templeton/Waitz survey maps out a linear boundary line on the up the bayou side of the ditch. Jo-Blanche argued that the boundary line as shown on the Templeton/Waitz survey is the same as the boundary line mapped out by the 1973 McGee survey, which is referenced and incorporated into the Marcellos' 1990 title. Jo-Blanche further argued that the survey prepared by the Marcellos' surveyor, Michael P. Blanchard with Acadia Land Surveying, LLC, also shows the same boundary line as the 1973 McGee survey and the 2020

---

[4] A boundary may not be fixed in an action for declaratory judgment. See **Vignes v. Jarreau**, 222 So. 2d 566, 569 (La. App. 1st Cir.), writs denied, 223 So. 2d 871, 874 (La. 1969). In this dispute, the Marcellos requested a boundary action in the alternative to declaratory judgment. Therefore, we will consider this case as a boundary action.

Templeton/Waitz survey.

The trial court held a bench trial of the Marcellos' boundary action on August 7 and 10, 2020. The trial court admitted the entirety of the record of the previous possessory action into evidence.[5] At its conclusion, the trial court rendered judgment fixing the boundary between the adjacent properties in accordance with title. The trial court fixed the boundary pursuant to the 2020 Templeton/Waitz survey. The trial court signed a judgment in accordance with its oral reasons on August 26, 2020. The Marcellos now appeal.

## LAW: THE BOUNDARY ACTION

Three real actions to determine ownership or possession of immovable property are the possessory action, the petitory action, and the boundary action.[6] A boundary action is a nominate real action under the Code of Civil Procedure that is distinct from a possessory and a petitory action.[7] See **Hooper v. Hero Lands Co.,**

---

[5] Although the parties stipulated to its admission, the prior record, labeled Exhibit P-6, is not a part of the record on appeal. The record on appeal contains only a one-page "notice" of the parties' stipulation. The Marcellos, as appellants, are charged with the responsibility of completeness of the record for appellate review, and any inadequacy of the record is imputable to them. See **Niemann v. Crosby Dev. Co., L.L.C.,** 2011-1337 (La. App. 1st Cir. 5/3/12), 92 So. 3d 1039, 1044.

[6] A possessory action is a real action brought by the actual or recently evicted possessor of immovable property to be maintained in or restored to possession. See La. C.C.P. arts. 3655-3662. A possessory action is available to a "possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." La. C.C.P. art. 3655. A petitory action has as its purpose the recognition of title in favor of a plaintiff who is not in possession of claimed property. See La. C.C.P. arts. 3651-3653. "The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership." La. C.C.P. art. 3651.

[7] In contrast to a possessory action, the boundary action may be brought by a possessor without regard to the requirements of a possessory action, as set forth in La. C.C.P. art. 3658. **Kadair v. Hampton,** 2013-1171 (La. App. 1st Cir. 7/10/14), 146 So. 3d 694, 704, writ denied, 2014-1709 (La. 11/7/14), 152 So. 3d 177. In contrast with a petitory action—brought for the recognition of ownership of an immovable or of a real right—the boundary action is brought for the fixing of the boundary between contiguous lands. One who claims the ownership of a strip of land adjoining the land of a neighbor may bring the petitory action or the action of boundary, or he may cumulate the two. It is true that the burden of proof is different in each of the two actions, but when ownership is claimed, the proof of ownership is the same. See A.N. Yiannopoulos and Ronald J. Scalise, Jr., "Nature of the boundary action," 2 LA. CIV. L. TREATISE, Property §11:31 (5th ed.).

2015-0929 (La. App. 4th Cir. 3/30/16), 216 So. 3d 965, 972, writ denied, 2016-0971 (La. 9/16/16), 206 So. 3d 205. A boundary action is brought as an ordinary proceeding by the owner or possessor of one of two (or more) contiguous tracts of land to compel the fixing of the boundary between the adjacent tracts of land. See La. C.C. arts. 785-787; La. C.C.P. arts. 3691-3693. In a boundary action, the trial court renders judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties. La. C.C.P. art. 3693. Accordingly, questions of title and ownership may be determined in an action of boundary. The trial court shall fix the boundary according to the ownership of the parties; however, if neither party proves ownership, the boundary shall be fixed according to limits established by possession. See La. C.C. art. 792.

If both parties rely on titles to prove the boundary, and the titles are traced to a common ancestor, the trial court shall give preference to the more ancient title.[8] See La. C.C. art. 793. If the parties trace their titles to different ancestors, none of whom is an undisputed previous owner, the court shall fix the boundary according to the limits established by possession. See La. C.C. art. 792.

However, if either party, or both parties, rely on acquisitive prescription, "the boundary shall be fixed according to limits established by prescription rather than titles." La. C.C. art. 794; **Kadair v. Hampton**, 2013-1171 (La. App. 1st Cir. 7/10/14), 146 So. 3d 694, 701, writ denied, 2014-1709 (La. 11/7/14), 152 So. 3d 177. Thus, if one party relies on title and the other party on acquisitive prescription, the party relying on title prevails unless the other party establishes his ownership by acquisitive prescription. See **Duplantis v. Bergeron**, 2010-2244 (La. App. 1st Cir. 10/5/11), 2011 WL 4613014, at *3 (unpublished). If a party and his ancestors in title possessed for thirty years without interruption, within visible

---

[8] This is because the common ancestor is presumed to have been the previous owner of the property. See La. C.C. art. 532.

7

bounds, more land than their title called for, the boundary shall be fixed along those lines. La. C.C. art. 794; **Kadair**, 146 So. 3d at 701.

A possessor lacking good faith and/or just title may acquire prescriptive title to land by corporeally possessing a tract for thirty years with the intent to possess as owner. **Kadair**, 146 So. 3d at 701. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425; **Kadair**, 146 So. 3d at 701. Thirty years of corporeal possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually corporeally possessed. See La. C.C. arts. 3424-3426, 3476, 3486-3487; **Kadair**, 146 So. 3d at 701.

For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487; **Kadair**, 146 So. 3d at 701. Actual possession must be either inch-by-inch possession or possession within enclosures. **Kadair**, 146 So. 3d at 701. An enclosure is any natural or artificial boundary. **Kadair**, 146 So. 3d at 701. The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. **Kadair**, 146 So. 3d at 701-02.

A title holder may acquire more land than his title calls for by possessing property beyond his title for thirty years without interruption and within visible bounds. La. C.C. art. 794; **Kadair**, 146 So. 3d at 702. Such a title holder may attain the thirty-year possessory period—which is necessary to perfect prescriptive title in the absence of good faith and just title—by "tacking" on to the possession of his ancestor in title. La. C.C. arts. 794 and 3442; **Kadair**, 146 So. 3d at 702. The privity of title between the possessor and his ancestor in title need not extend

to the property to which the possessor asserts prescriptive title. La. C.C. art. 794; **Kadair**, 146 So. 3d at 702. The juridical link, or written instrument, that passes to the possessor from his ancestor in title need not encompass or include the particular property to which the possessor claims prescriptive title. La. C.C. art. 794; **Kadair**, 146 So. 3d at 702.

The party claiming acquisitive prescription bears the burden of proof. <u>See</u> La. C.C. art. 794; **Kadair**, 146 So. 3d at 703. Whether a party has possessed property for purposes of thirty-year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. **Kadair**, 146 So. 3d at 702. Additionally, the location of a boundary line is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error. **Kadair**, 146 So. 3d at 702. Where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. **Kadair**, 146 So. 3d at 702 (<u>citing</u> **Rosell v. ESCO**, 549 So. 2d 840, 844 (La. 1989)). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. **Kadair**, 146 So. 3d at 702 (<u>citing</u> **Rosell**, 549 So. 2d at 844). It is only when documents or objective evidence so contradict the witness's story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit the witness's story, that the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. **Kadair**, 146 So. 3d at 702 (<u>citing</u> **Rosell**, 549 So. 2d at 844-45). But where such factors are not present, and a fact-finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be

manifestly erroneous or clearly wrong. **Kadair**, 146 So. 3d at 702 (citing **Rosell**, 549 So. 2d at 845).

## DISCUSSION

The Marcellos bore the burden of proof as the party claiming acquisitive prescription. Because the Marcellos sought to prove their boundary action by acquisitive prescription rather than by title, they were required to prove possession of thirty years without interruption. See La. C.C. art. 794; **Kadair**, 146 So. 3d at 703.

Steven Marcello testified that he purchased his property in 1990 from Dr. Ernest C. Hansen, Jr. and his wife, Will Grace. Steven testified that his property was bounded by the Guidry property to the west, the Jo-Blanche property to the east on the down the bayou side, the batture of Bayou Lafourche to the front, and the 80 arpent canal to the rear. Located on the Marcellos' property is the Marcellos' home, three barns, a horse pasture, and a grassy field road, called the Aupied road.

As to the front section of the Marcello property—from the batture of Bayou Lafourche to the middle section—Steven testified that he believed the boundary between the properties to be the down the bayou side of a swale ditch. The swale ditch is shallow enough that it can be easily walked across and cut with a lawnmower. After Steven purchased the property, he met with his uncle, Sam Marcello (then-manager of the Jo-Blanche Farm), to discuss clearing the front section of his property and the location of the swale ditch. Steven wanted to hire a contractor to clear out the front section of the property, in anticipation of one day building a house. Sam agreed that Steven could clear the front section and enhance the swale ditch at its present location. While Steven and Sam agreed to keep the swale ditch in the same location, they did not discuss that the swale ditch was the actual boundary between the properties. Thereafter, Steven paid his contractor to

10

clear out the front section and haul in dirt to enhance and maintain the drainage of the swale ditch. Steven testified that he maintains and sprays the swale ditch. Steven testified that he and his family consistently use the front section of the property to ride their tractor and 4-wheeler, host parties, park vehicles, and bring horses and heavy equipment onto the Marcello property. Steven also cuts and fertilizes the grass.

As to the middle "pasture" section of the Marcello property, Steven testified that the entire pasture area is fenced in because he raises quarter horses. Steven stated that he understood the boundary between the properties in the middle section to be the current location of the fence—which he erected in the center of the swale ditch—per the ruling of the courts in the prior possessory action. Jo-Blanche did not dispute that the fence line is the boundary of the middle section.

As to the back section of the Marcello property—the pasture area to the 80 arpent canal in the rear—the properties are separated by a cane field ditch, or a visible "V" ditch. Steven testified that when he first bought the property, PJ Acosta took him out to the back section and pointed out the ditch as the boundary. PJ Acosta, along with his brother Bobby Acosta, were tenant sugarcane farmers who farmed the Marcello property pursuant to an oral lease with Steven after he purchased the property in 1990. The Acosta brothers also farmed the Jo-Blanche property. Jo-Blanche President David Marcello testified that the tenant farmers did not use the ditch as the legal boundary between the properties but instead used the ditch to divide cane revenue. Specifically, the revenues from the cane farmed on the down the bayou side of the ditch are attributed to Jo-Blanche, while the cane farmed on the up the bayou side of the ditch are attributed to the Marcellos.

On the back section of his property, Steven testified that he goes crawfishing in a pond, hunts dove and pigs, and rides horses. Steven also testified that he, along with the tenant farmers for Jo-Blanche, used the Aupied road, which begins

11

in the back section of the property. Steven stated that he keeps a deer stand on the road, uses the road to access a crawfish pond, as well as for riding his horses and recreational purposes. Steven stated that he cuts the grass covering the road and occasionally sprays the ditch next to the road. Steven claimed that the Aupied road and the ditch are part of the Marcello property. Jo-Blanche President David Marcello testified, however, that the Marcello and Jo-Blanche tenant farmers were responsible for maintaining the ditch in the back section of the property per their tenant farming agreements.

The Marcellos hired Michael P. Blanchard with Acadia Land Surveying, LLC to prepare a survey of the Marcello property to "recover the boundary line" and show the Marcellos' possession. Blanchard testified that when he went out to visit the Marcello property, his survey crew recovered survey markers from the previous 1973 McGee survey and were able to recreate the property line. Blanchard testified that he reviewed the 1993 McDonald survey commissioned by the Marcellos, which references the McGee survey, and he "felt it was one in the same, so [he] basically used the McGee map to [recreate] it." Blanchard also reviewed the 2020 Templeton/Waitz survey; he testified that his "survey line and Waitz's survey line [are] one and the same."

Blanchard prepared a survey showing the boundary line in accordance with the 1973 McGee survey (a solid line) versus the Marcellos' alleged line of possession (a dotted line). Blanchard reviewed the transcript of the possessory action trial, as well as the depositions of the parties and the tenant farmers in order to create the dotted possession line. After Blanchard prepared his August 19, 2019 survey, his crew placed flags on the up the bayou side of the swale ditch in the front and back sections of the Marcello property to delineate the boundary. Steven testified that he removed the Blanchard survey flags because he did not "recognize those markers as the line."

12

Jo-Blanche hired James M. Templeton with David A. Waitz Engineering and Surveying, Inc. to prepare a survey of the adjacent properties. Templeton testified that the boundary line depicted on his July 30, 2020 survey was consistent with the 1973 McGee survey *and* the 2019 Blanchard survey.

At the conclusion of trial, the trial court found as follows:

> In short, the Court just does not believe that there was any sufficient evidence to establish that there was adverse possession by Dr. [Steven] Marcello of that road. I haven't addressed whether he possessed the ditch because there is absolutely no evidence that he possessed or used the ditch. The ditch may have drained both properties, but that's the nature of the ditch. Alternatively, even if I were to find that Dr. Steven Marcello's actions constituted adverse possession in these areas, the front area, or the back area, the law requires 30 years of uninterrupted adverse possession.

> Even if I were to say that Dr. [Steven] Marcello's testimony establishes open and adverse possession and actions sufficient to constitute open and adverse possession from the day he bought the property, he still didn't have 20 years. He was a little less than 29 years when the suit was filed and responded to by the defendants, thereby, interrupting his alleged adverse possession. He clearly had the right to tack any prior adverse possession by Dr. Hansen and Will Grace[,] which might have been proven, but no such evidence has been presented to the Court[,] much less sufficient evidence to establish by a preponderance of the evidence that there was adverse possession to be tacked.

> In considering all of the evidence produced, the Court rules that the boundary should be set in accordance with the survey of Mr. James Templeton dated July 30th 2020…as representing the historic boundary in accordance with the parties['] respected possession. Yes, the ditch may meander slightly; but the essence of the testimony was that his boundary line was in accordance with the average northern bank of that ditch. And the Court will set the boundary as such.

> When the Court refers to common boundaries specifically, the Court is referring to the -- Mr. Templeton's survey, the up-the-bayou or northwestern boundary of the Jo-Blanch[e] tract identified on said plat measuring[,] it looks like[,] a total of 14,332.38 feet.

> ***

> I think I said in my reasons that the pasture area -- The

pasture area was basically conceded by both parties to be the possession line. So that's also reflected in the survey.

The Marcellos' argue that the trial court erred in establishing a boundary between the Marcello and Jo-Blanche properties in accordance with the Templeton/Waitz survey instead of the "possessory boundary" as allegedly found by the trial court and affirmed by this court in the previous possessory action involving "the same parties and this same property."[9] Under the "law of the case" doctrine, an appellate court generally will not reconsider, on a subsequent appeal, its earlier ruling in the same case; however, this discretionary doctrine only applies to parties and issues that were actually presented and decided by the appellate court. **Mire v. Eatelcorp, Inc.**, 2004-2603 (La. App. 1st Cir. 12/22/05), 927 So. 2d 1113, 1117, writ denied, 2006-0209 (La. 4/24/06), 926 So. 2d 549.

The prior litigation referenced by the Marcellos was a possessory action, *not* a boundary action, as is the instant case. As stated above, in contrast to a possessory action, the boundary action may be brought by a possessor without regard to the requirements of a possessory action, as set forth in La. C.C.P. art. 3658. **Kadair**, 146 So. 3d at 704. Because a judgment in a boundary action necessarily involves a preliminary determination of ownership, it arguably cannot be cumulated with a possessory action. **Hooper**, 216 So. 3d at 972 (citing La. C.C.P. art. 3661 ("In the possessory action, the ownership...of the parties...is not at issue."); **Kadair**, 146 So. 3d at 704 ("[P]roof of ownership is a necessary prerequisite to establishing the boundary"); and **Harvey v. Harvey**, 345 So. 2d 113, 115-16 (La. App. 1st Cir.), cert. denied, 347 So. 2d 246 (La. 1977) (affirming trial court's grant of exception of improper cumulation of possessory and boundary

---

[9] Assignment of Error No. 1.

14

actions).[10] In contrast, a boundary action may be cumulated with a petitory action, as both seek to determine ownership. See **Hooper**, 216 So. 3d at 973. Furthermore, as stipulated by the parties, the prior possessory action litigated possession only as to the middle "pasture" portion of the property. In contrast, the Marcellos' petition sought a fixed boundary as to the entire property.

Furthermore, Jo-Blanche did not dispute that the fence line is the boundary of the middle section. Additionally, the trial court specifically noted that the fence was the boundary between the adjacent properties in the middle section, which is also reflected on the 2020 Templeton/Waitz survey. For these reasons, we find that the law of the case doctrine does not apply in this instance.

The Marcellos further argue that the trial court erred by "applying an incorrect burden of proof that excused Jo-Blanche from demonstrating actual possession other than pursuant to the physical boundary established by the Boundary Ditch and honored by the owners and precarious possessors of both the [Marcello] and Jo-Blanche Properties."[11] As outlined above, the Louisiana Civil Code and Code of Civil Procedure set forth several different methods to determine a boundary. The provisions cited *supra* do not explain how to establish a boundary when one side (the Marcellos) claims possession of a disputed tract but cannot prove acquisitive prescription, and the other side (Jo-Blanche) claims ownership of the property according to the Marcellos' title instead of their own title. See, *e.g.*, **Andermann v. Rouillier**, 2018-88 (La. App. 5th Cir. 4/25/19), 271 So. 3d 384, 397, writs denied, 2019-00971, 2019-00981 (La. 9/24/19), 278 So. 3d 978, 935.

When ownership of a disputed tract of adjacent properties is at issue in a boundary action, the court must look to the burden of proof set forth in La. C.C.P.

---

[10] Cf. **Fontenot v. Chapman**, 377 So. 2d 492, 495-96 (La. App. 3rd Cir. 1979) (defendant's reconventional demand seeking a fixing of the boundary line did not convert possessory action into petitory action).

[11] Assignment of Error No. 3.

art. 3654. **Andermann**, 271 So. 3d at 399-400 (<u>citing</u> Frank L. Maraist, "The Boundary Action," 1A LA. CIV. L. TREATISE, Civ. Proc. - Special Proceed. § 9.5 n.7 (Aug. 2020 Update)). <u>See also</u> **Taylor v. Dumas**, 48,055 (La. App. 2nd Cir. 5/15/13), 115 So. 3d 755, 758-759, <u>writ denied</u>, 2013-1715 (La. 11/1/13), 125 So. 3d 432 (<u>citing</u> **Loutre Land & Timber Co. v. Roberts**, 2010-2327 (La. 5/10/11), 63 So. 3d 120, 123-24). Because both of the parties' titles may include the same land, or a party may have possessed land beyond that described in his or her title, the boundary action also determines ownership. Under those circumstances, La. C.C.P. art. 3654 applies to determine the proper burden of proof. <u>See</u> **Andermann**, 271 So. 3d at 400 (<u>citing</u> Maraist, "The Boundary Action," 1A LA. CIV. L. TREATISE, Civ. Proc. - Special Proceed. § 9.5 n.7).

The burden of proof for the boundary action is expressed in La. C.C.P. art. 3654, which provides, in pertinent part:

> [T]he court shall render judgment in favor of the party:
>
> (1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription.

Thus, under La. C.C. art. 792 and La. C.C.P. art. 3654, the Marcellos had the burden of proving ownership to the disputed property as acquired either from: (1) a previous owner, or (2) through acquisitive prescription by actual possession. <u>See, e.g.</u>, **Taylor**, 115 So. 3d at 758-59. The Marcellos sought to prove ownership through acquisitive prescription by actual adverse possession. As the party claiming acquisitive prescription, the Marcellos bore the burden of proof. Because the Marcellos sought to prove their boundary action by acquisitive prescription rather than by title, they were required to prove possession of thirty years without interruption by a preponderance of the evidence. <u>See</u> La. C.C. art. 794; **Kadair**, 146 So. 3d at 703; **Gelpi v. Shall**, 355 So. 2d 1014, 1016 (La. App. 4th Cir. 1978).

Once the trial court found that the Marcellos failed to carry their burden to establish acquisitive prescription, La. C.C.P. art. 3654 mandated that the trial court render judgment in favor of the party "[w]ho would be entitled to the possession of the immovable property or real right therein in a possessory action." Jo-Blanche established that it was entitled to ownership up to the 2020 Templeton/Waitz survey line fixing the boundary between the adjacent properties on the up the bayou side of the drainage ditch. Accordingly, La. C.C.P. art. 3654 mandated judgment in favor of Jo-Blanche.

Based on our extensive review of the record and the trial court's reasons for judgment, we find no manifest error in the trial court fixing the boundary between the Marcello property and the Jo-Blanche property in accordance with the boundary line as mapped out by the 2020 Templeton/Waitz survey.[12] See **Kadair**, 146 So. 3d at 702.

## DECREE

We affirm the trial court's August 26, 2020 judgment. All costs of this appeal are assessed to plaintiffs/appellants, Steven J. Marcello and Rosalie C. Marcello.

**AFFIRMED.**

---

[12] Finding no manifest error in the trial court's judgment, we likewise find no merit to the Marcellos' second and fourth assignments of error.