STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 1015

ALLEN J. HEBERT, JR., ET AL.

VERSUS

SUPERIOR RENTAL PROPERTIES, LLC AND KEVIN P. BELANGER

Judgment Rendered: ____SEP 2 5 2024____

Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Docket No. 191128

The Honorable David W. Arceneaux, Judge Presiding

Charles G. Blaize, Jr.          Counsel for Plaintiffs/Appellees,
Brett L. Bajon                  Allen J. Hebert, Jr., Rena V. Labat,
Baton Rouge, Louisiana          John Guidry, and Donald J. Verret,
                                Jr.

Gregory J. Schwab               Counsel for Defendants/Appellants,
Houma, Louisiana                Superior Rental Properties, LLC
                                and Kevin P. Belanger
Mark D. Plaisance
Marcus J. Plaisance
Prairieville, Louisiana

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

McClendon, J. Concurs in the Result Reached by the majority.

**MILLER, J.**

This property boundary dispute is before us on appeal by defendants, Superior Rental Properties, LLC and Kevin P. Belanger, from a judgment of the trial court rendered in favor of plaintiffs, Allen J. Hebert, Jr., Rena V. Labat, John Guidry, and Donald J. Verret, Jr. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 3, 2021, Allen J. Hebert, Jr., Rena V. Labat, John Guidry, and Donald J. Verret, Jr. (collectively referred to as "plaintiffs" or "the Leon Hebert heirs") filed a "Petition to Fix Boundary, for Trespass, Preliminary Injunction, Permanent Injunction, [and] Damages" seeking to restrain and enjoin Superior Rental Properties, LLC ("Superior") and its owner, Kevin P. Belanger, (sometimes collectively referred to as "defendants") from interfering with their use of certain immovable property, in which they owned an undivided interest. Plaintiffs alleged therein that, as the heirs of Leon Hebert, they owned undivided interests in a certain tract of land ("the Hebert tract") described as follows:

> The following described immovable property situated in the Parish of Terrebonne, State of Louisiana, Township 19 South, Range 19 East:
>
> Being located on both sides of Bayou Terrebonne and having 427 feet front on said bayou (more or less) by depth of survey in Section 7 (52) and more fully described in the Succession of Leon Hebert (Assessment Parcel No. 31577); bounded (now or formerly) above by A. Authement and below by B. Cunningham.

Plaintiffs contended that by separate Acts of Sale dated May 4, 2020, June 19, 2020, and August 24, 2020, certain heirs of Gustave P. Authement ("the Authement Heirs") conveyed to defendants undivided interests in properties North of the Hebert tract and bounded "South or below on both banks of Bayou Terrebonne by the Heirs of Leon Hebert" ("the Authement tract").

Plaintiffs alleged that on July 3, 2020, Mr. Belanger, acting individually or on behalf of Superior, entered upon the Hebert tract, damaged and removed

2

fencing, damaged the surface, and restricted access to the land, which amounted to a disturbance in possession, nuisance, and trespass. Plaintiffs alleged that prior to July of 2020, they asserted continuous, uninterrupted, public, peaceable and unequivocal possession of the Hebert tract, within a gated and fenced boundary, in good faith and with just title for many years until July 3, 2020. Plaintiffs further contended that the boundary line (between the Hebert and Authement tracts) has been established for a period of greater than thirty years of possession and use. Plaintiffs thus sought an injunction ordering defendants to refrain from trespassing or interfering with the Hebert tract in any way, pursuant to La. C.C.P. art. 3663(2), which allows the owner of a real right in immovable property to enforce that right by enjoining trespassers and disturbers.[1]

Defendants responded by filing peremptory exceptions of no cause and no right of action and an answer asserting affirmative defenses. In support of their exceptions, and as an affirmative defense, defendants urge that they are co-owners of the Hebert tract with plaintiffs. Thus, defendants maintain they have the right to possess the entirety of the Hebert tract, such that the injunction sought by plaintiffs is improper.

Thereafter, plaintiffs filed an amended petition maintaining that at the time their original petition was filed, there was no record transfer of title of any interest in the Hebert tract to defendants. However, plaintiffs contend that after their petition was filed, defendants purchased and recorded an interest in the Hebert tract from Jackie Marie Properties, LLC, pursuant to a Cash Sale dated May 26, 2021. Jackie Marie Properties, LLC had acquired its interest in the Hebert tract from tax sale purchases recorded on June 25, 2015 and July 10, 2017. Plaintiffs contend that the tax sale titles have not been quieted by judgment, and thus defendants may only have an inchoate lien right and not a full ownership interest in the property.

---

[1] See La. C.C.P. art. 3663, Official Revision Comments – 1960 and 1981, Comment (b).

3

Plaintiffs maintain that all actions by defendants prior to having acquired this interest on May 26, 2021, constituted a compensable trespass, and that defendants' actions as a co-owner following its acquisition of an interest, i.e., removing gates and fences, and otherwise changing the factual destination and historical uses of the property, were all without compensation to or authorization from the co-owners in violation of La. C.C. arts. 460, *et seq.* Plaintiffs requested that the trial court issue a cease-and-desist order against defendants prohibiting the unapproved use, contending that the defendants have no authority as co-owners to utilize the lands in a manner that changes the present use and destination of the property. Plaintiffs again requested issuance of preliminary and permanent injunctions pursuant to La. C.C.P. art. 3663, enjoining defendants from changing the present use and destination of the property and from restricting access to the property.

The matter proceeded to a bench trial on August 24, 2022. Plaintiffs presented the testimony of Allen J. Hebert, Jr., a great grandson of Leon Hebert, and his two sons, Beau Hebert and Brian Hebert. In connection with their testimony, plaintiffs introduced eleven exhibits, including documents and photographs. Defendants offered the testimony of Grant Dupre, whom the trial court accepted as an expert in abstracting, Terral J. Martin, Jr., whom the parties stipulated was an expert in land surveying, and Kevin P. Belanger. In connection with their testimony, defendants offered thirty-nine exhibits, including documents, reports, and maps.

At the conclusion of trial, the trial court took the matter under advisement, allowing the parties to file post-trial memoranda. On March 7, 2023, the trial court issued a judgment setting the Southern boundary of Superior's property and Northern boundary of the Hebert tract, and thereby establishing and declaring a boundary line; granting a permanent injunction in favor of plaintiffs, thereby enjoining defendants from undertaking any substantial alterations or substantial

4

improvements to the immovable property; dismissing plaintiffs' claims against Mr. Belanger, with prejudice; and assessing all costs against Superior. The judgment was accompanied by thorough and extensive reasons, which reviewed, in detail, the history of the property commencing in 1807, through the time of trial, as established by the testimony and evidence presented herein. The trial court noted therein that it was not possible to fix the boundary based on ownership by title, and that it was thus compelled to resolve the boundary issue pursuant to La. C.C. art. 792, *et seq.*, based on acquisitive prescription. See 2 La. Civ. L. Treatise, Property §11:34 (5th ed.)

Defendants now appeal, contending that the trial court erred in: (1) denying their peremptory exceptions of no cause and no right of action; (2) finding that plaintiffs have the legal right to represent the remaining co-owners in an adverse possession or boundary proceeding; (3) erroneously setting the boundary line; and (4) in failing to fully describe the property.[2]

## DISCUSSION

### Peremptory Exceptions of No Right of Action and No Cause of Action[3]
### (Assignment of Error Number One)

The objections of no cause of action and no right of action are "separate and distinct" under Louisiana law. LeBlanc v. Alfred, 2015-0397 (La. App. 1st Cir. 12/17/15), 185 So. 3d 768, 773. The objection that a petition fails to state a cause of action is properly raised by the peremptory exception of no cause of action. La. C.C.P. art. 927(A)(5). The objection that a particular plaintiff has no right to assert

---

[2]Defendants do not assign error to the portion of the judgment granting injunctive relief to plaintiffs.

[3]The trial court deferred ruling on defendants' exceptions of no right and no cause of action prior to trial, and the judgment issued by the trial court after taking the matter under advisement is silent as to the exceptions. Silence in a judgment as to any issue that was placed before the trial court is deemed a rejection of that demand or issue. Robertson v. Sun Life Financial, 2009-2275 (La. App. 1st Cir. 6/11/10), 40 So. 3d 507, 510. Thus, the exceptions are deemed denied.

the cause of action raised is properly brought through the peremptory exception of no right of action. La. C.C.P. art. 927(A)(6).

The peremptory exception of no cause of action questions whether the law affords any relief to the plaintiff if the plaintiff proves the factual allegations in the petition and annexed documents at trial. For purposes of determining the issues raised by the exception of no cause of action, all well-pleaded facts in the petition must be accepted as true. Ordinarily, no evidence may be introduced to support or controvert the exception of no cause of action. See La. C.C.P. art. 931; LeBlanc, 185 So. 3d at 773.

An objection of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Expert Riser Solutions, LLC v. Techcrane International, LLC, 2018-0612 (La. App. 1st Cir. 12/28/18), 270 So. 3d 655, 663. If a petition can be amended to state a cause of action, the party opposing the exception must be given a fair opportunity to amend. See La. C.C.P. art. 934.

The purpose of the peremptory exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. SATCO, Inc. v. Professional Application Services, Inc., 2023-0012 (La. App. 1st Cir. 10/19/23), 377 So. 3d 324, 327. The exception of no right of action does not raise the question of the plaintiff's ability to prevail on the merits, nor the question of whether there is a valid defense to the proceeding. LeBlanc, 185 So. 3d at 774. Evidence is admissible on the trial of an exception of no right of action to support or controvert

6

the objections pleaded when the grounds for the objection do not appear in the petition. See La. C.C.P. art. 931.

On appeal, the *de novo* standard of review applies in reviewing exceptions of no cause of action and no right of action to determine whether the trial court was legally correct. SATCO, Inc., 377 So. 3d at 327; Labranche v. Landry, 2022-0461 (La. App. 1st Cir. 12/15/22), 357 So. 3d 395, 403; LeBlanc, 185 So. 3d at 775. However, when evidence is introduced to support or controvert an exception of no right of action, factual findings are reviewed under the manifest error-clearly wrong standard of review. Pearce v. Lagarde, 2020-1224 (La. App. 1st Cir. 10/7/21), 330 So. 3d 1160, 1167, writ denied, 2022-00010 (La. 2/22/22), 333 So. 3d 446.

In this first assignment of error, defendants contend that the trial court erred in denying their exceptions of no cause of action and no right of action. Defendants contend that because Superior is a co-owner of the Hebert tract, plaintiffs have no cause of action against them based on adverse possession. Defendants also contend that, as co-owners in indivision, plaintiffs have no right of action against Superior, a fellow co-owner, without the permission of all co-owners.

In their original petition, plaintiffs asserted a boundary action, an action in trespass pursuant to La. C.C. art. 667, and an action for injunctive relief pursuant to La. C.C.P. art. 3663, against defendants.[4] Defendants answered the original petition and urged the exceptions of no right of action and no cause of action

---

[4]Pursuant to La. C.C.P. art. 3663, injunctive relief to protect or restore possession of immovable property or of a real right therein is available to:

(1) A plaintiff in a possessory action, during the pendency thereof; and
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right therein of which he claims the ownership, the possession, or the enjoyment.

alleging that Superior was a co-owner of the Hebert tract, and as such, it had a right to possess the entirety of the Hebert tract.

Plaintiffs thus amended their petition, contending that after the filing of their original petition, Superior acquired an "unquieted undivided interest from a tax sale purchaser by Cash Sale dated May 26, 2021," and that under the "guise of co-owner," Superior asserted a "defense by exception" that plaintiffs "could not evict him or claim trespass." Plaintiffs alleged that defendants' actions prior to May 26, 2021, constituted a compensable trespass, and that the tax sale had not been quieted by judgment, and consequently, Superior "may only have an inchoate lien right and not a full ownership interest in the property." Irrespective of whether Superior had quieted its title, plaintiffs contended that, if Superior was a co-owner, its actions of removing gates and fences and otherwise changing the factual destination of the historical uses of the property were without compensation to or authority from other co-owners and were made in bad faith, in violation of La. C.C. arts. 460, *et seq.*

As to their boundary action, accepting the facts pleaded in that petition as true, plaintiffs were afforded a cause of action to have the court render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties. See La. C.C.P. art. 3693.[5] Moreover, as owners of the Hebert tract, plaintiffs belonged to the class of persons to whom the law granted the cause of action asserted in the suit, and thus had a right of action. See La. C.C.P. art. 3693 and La. C.C. art. 792.[6] Plaintiffs further alleged that at the

---

[5]Louisiana Code of Civil Procedure article 3693 provides as follows:

> After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties.

[6]Louisiana Civil Code article 792 provides that:

time of the filing of their original petition, they had a cause of action against defendants in trespass where the Conveyance Records of Terrebonne Parish revealed no recorded transfer of any interest in the Hebert tract to defendants.

On review, we are mindful that Superior wears two hats: one as a co-owner and one as an adjacent property owner. Plaintiffs had a cause of action and right to assert these claims against defendants as co-owners and adjacent property owners. See La. C.C. arts. 799-804. While it is true that a co-owner is prohibited from adversely possessing against a co-owner, this restriction does not apply here where Superior is an adjacent landowner.

Notably, defendants did not re-urge their exceptions after plaintiffs filed their amended petition. Nonetheless, based on our *de novo* review of the record, accepting the well-pleaded facts in the petitions as true, we find no error in the trial court's determination that plaintiffs have asserted a cause of action. Moreover, we find no legal or manifest error in the trial court's determination that plaintiffs have a right of action herein. Accordingly, we find no merit to this assignment of error.

### Actions by a Co-owner
### (Assignment of Error Number Two)

In their second assignment of error, defendants contend that plaintiffs have no right to represent the remaining co-owners, "who could number in the hundreds, or more," in these proceedings. Defendants further contend that plaintiffs cannot act without the consent of all co-owners under the articles dealing with co-ownership, citing La. C.C. arts. 797, 801, and 802.

Louisiana Civil Code article 797 provides that:

> Ownership of the same thing by two or more persons is ownership in indivision. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal.

---

The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession.

9

Louisiana Civil Code article 801 provides that:

> The use and management of the thing held in indivision is determined by agreement of all the co-owners.

Louisiana Civil Code article 802 provides that:

> Except as otherwise provided in Article 801, a co-owner is entitled to use the thing held in indivision according to its destination, but he cannot prevent another co-owner from making such use of it. As against third persons, a co-owner has the right to use and enjoy the thing as if he were the sole owner.

Plaintiffs contend, however, that defendants fail to acknowledge and ignore a co-owner's right to act independently for the preservation of the thing held in indivision pursuant to La. C.C. art. 800. Louisiana Civil Code article 800 provides that:

> A co-owner may without the concurrence of any other co-owner take necessary steps for the preservation of the thing that is held in indivision.

The 1990 Revision Comments to Article 800 further provide:

> This provision is new. It expresses the principle that **necessary steps for the preservation of the thing held in indivision may be taken by any of the co-owners acting alone.** This is not unauthorized management of the affairs of another under Civil Code Article 2295 (1870). For the distinction between conservatory acts, acts of administration, and acts of disposition, see Yiannopoulos, Personal Servitudes §37 (2d ed. 1978); Baudry-Lacantinerie, Traite Theorique et pratique de droit civil, III Supplement by Bonnecase 630-686 (1926).

(Emphasis added.)

At trial, one of the plaintiffs, Mr. Allen J. Hebert, Jr., testified that the actions of Mr. Belanger, which included tearing down the fence, burning things on the property, removing the culverts, and placing debris on the property, were destroying the property. Mr. Hebert took photographs of the damage and contacted an attorney to attempt to stop the destruction and preserve the land. Mr. Hebert's son, Brian Hebert, testified that he also took photographs of the damage

10

to the property caused by defendants and identified same. These photographs were introduced into evidence.

As a landowner, even as to the land owned in indivision, a co-owner has the right to protect his property rights, without regard to what the other co-owners want to do with their interests. A co-owner need not join other co-owners in his suit to enforce his own rights as landowner. Gilmore v. Holifield Sportsman Properties, LLC, 2023-1232 (La. App. 1st Cir. 6/14/24), 2024 WL 2988860, *2 and *4 (unpublished), Guidry, C.J. concurring, citing Whitlock v. Fifth Louisiana District Levee Board, 49,667 (La. App. 2nd Cir. 4/15/15), 164 So. 3d 310, 318 and Allain v. Shell Western E & P Inc., 99-0403 (La. App. 1st Cir. 5/12/00), 762 So. 2d 709, 716.

Accordingly, we find that plaintiffs, as co-owners, were entitled to take necessary steps to preserve the land without the consent of all other co-owners. Accordingly, we find no merit to this assignment of error.

## Placement of the Boundary Line
## (Assignment of Error Number Three)

In their third assignment of error, defendants contend that the trial court erroneously set the boundary line between the Hebert tract and the Authement tract.[7] Defendants argue plaintiffs' evidence is insufficient "to establish adverse possession by corporeal possession of property."

After reviewing the voluminous evidence herein, in its reasons for judgment, the trial court outlined the history of the neighboring tracts, ultimately determining that it was required to resolve the boundary dispute by acquisitive prescription. These reasons provided in part:

---

[7]Mr. Belanger testified that he purchased the last undivided interest in the Authement tract in 2020. In their post-trial memorandum, however, defendants contend that Mr. Belanger began purchasing the Authement tract in August of 2020 and completed purchasing the interest of all 47 family members by June of 2021. Nonetheless, defendants own 100% of the tract formerly known as the Authement tract.

11

[I]t is clear that there is a common boundary between the lands claimed by the Leon Hebert heirs and the lands immediately to the north acquired by Augustave Authement on June 1, 1899. The court has not received copies of any recorded acts to show that Augustave Authement ever conveyed or otherwise alienated the property after that date, nor has the court received copies of any recorded acts to show how the property was acquired from him by any present owners. The court did receive records from the Terrebonne Parish Tax Assessor reflecting information upon which the assessor has relied to assess property taxes against alleged owners of the property. (Defendant's Exhibit No. 2)

From these records, the court has surmised that Augustave Authement, also known as Gustave Authement, died sometime before 1977, and his heirs acquired the property.

* * *

The court is satisfied that this property described by the assessor refers to the original fifth partitioned parcel owned by Severine Guidry Hebert and ultimately acquired by Augustave Authement, and located adjacent to the northern boundary of the property of the Leon Hebert heirs. The court does note that the tax assessor's records indicate the property lies in Section 7, Township 19 South, Range 19 East, but there is no such reference in any of the acts of conveyance leading up to the acquisition of the property by Augustave Authement.

Beginning in 2020, Superior began acquiring undivided ownership interests in the fifth partitioned parcel owned by Augustave Authement at his death. These acquisitions are evidenced by the following documents received as evidence.:

1) Copy of a cash sale from Douglas J. Authement, et al[.], to Superior Rental Properties, LLC, dated May 4, 2020 (Defendants' Exhibit No. 28.);

2) Copy of a cash sale from Dorothy Authement Malbrough, et al[.], to Superior Rental Properties, LLC, dated June 19, 2020 (Defendants' Exhibit No. 29.);

3) Copy of a cash sale from Walter A. Walker, Jr., to Superior Rental Properties, LLC, dated August 24, 2020 (Defendants' Exhibit No. 30.);

4) Copy of a cash sale from Deborah Authement Shriner, et al[.], to Superior Rental Properties, LLC, dated June 11, 2021 (Defendants' Exhibit No. 31); and,

5) Copy of a cash sale from Mary Bergeron May, et al[.], to Superior Rental Properties, LLC, dated June 11, 2021 (Defendants' Exhibit No. 32.).

In all of the foregoing five documents, the property conveyed is consistently and precisely described as follows:

A certain tract of marshland situated in the Parish of Terrebonne, at about 22 miles below the City of Houma, situated in Section 7 & 52, Township 19 South, Range 19 East, Parish of Terrebonne, Louisiana, fronting on both descending banks of Bayou Terrebonne, bounded North or above by on both banks of said Bayou Terrebonne by land of Caliste Forest, formerly, now Superior Rental Properties LLC; East by the east line of Section 7 & 52, T19S-R19E, South or below on both banks of said Bayou Terrebonne by the heirs of Mr. and Mrs. Leon Hebert; and West by the west line of said Section 7 & 52, T19S-R19E, having a frontage of 163 feet by depth of survey; together with all buildings and improvements thereon, as well as rights, ways, privileges and servitudes thereunto belonging or in anywise appertaining.

\* \* \*

None of the ... acts by which Superior acquired ownership of the properties mentioned above, refer to or in any way reference any particular map alleged to depict the properties conveyed. The court is satisfied, however, that as a result of these transactions, Superior is the owner of at least an undivided interest in and to the land immediately north of the lands owned by the Leon Hebert heirs.

The issues presented to the court for resolution in this case ... do not require the court to determine the full measure or accurate measure of the full extent of the land claimed by the Leon Hebert heirs on the one hand and Superior on the other. Each party's ancestors in title acquired their respective ownership interests by separate and distinct juridical acts going back to a common ancestor in title, Edmond Guidry. The core issue in this case can be stated as a simple query: Where is the boundary line that separates the tract claimed by the Leon Hebert heirs from the lands claimed by Superior to the North? That this is a problem for present-day resolution should come as no surprise to anyone. As early as December 29, 1879, Edmond Guidry and his children recognized a potential boundary problem. Even though most of the front measurements of the various properties acquired by the parties to the act of partition were described with precision down to the inch, the parties did declare as follows in the act:

It is also understood, that whereas the tract of land herein above firstly fully described [the full six arpent tract] closes in on the left descending bank of Bayou Terrebonne as the lines go back, and opens or widens on the right descending bank as the lines go back; therefore the parties now holding said tract as demonstrated by this act agree to establish the lines dividing them with as little delay as possible, and without detriment to each other.

(Defendants' Exhibit No. 5(f).)

13

Superior presented evidence at trial regarding a "Boundary Agreement" with copies of numerous recorded acts purportedly relevant to the case at hand. (Defendants' Exhibit No. 6) The documents appear to have been items of evidence that may have been utilized in connection with other litigation, which seems to the court to have involved one or more land disputes in the same geographical area near Montegut. The documents appear to have been created and assembled for the purpose of trying to explain the confusion over the title to these lands. The court fails to understand the relevance of documents to the present litigation inasmuch as all of the recorded acts included therein predate December 29, 1879, and none of the documents purport to settle the boundaries of any of the properties within the original six arpent tract owned by Edmond Guidry and his children.

\* \* \*

The boundary action is recognized by Louisiana Code of Civil Procedure articles 3691, 3692, and 3693[.]

\* \* \*

The provisions of Louisiana Code of Civil Procedure article 3693, are rooted in articles 792, et seq. of the Louisiana Civil Code dealing with the effects of title, prescription, and possession in controversies involving land boundaries.

\* \* \*

In this case, it is not possible to fix the boundary between the lands of the respective parties based on ownership by title. The title of each party is equally ancient and equally defective, going back to their common authors or ancestors in title, Edmond Guidry and his children. In the case at hand, it cannot be said that both parties rely exclusively on titles for the establishment of the property boundary between them. The Leon Hebert heirs have specifically alleged that they had "continuous, uninterrupted, peaceable and unequivocal possession" of their land "in good faith and with just title for many years until July 3, 2020," that the boundary line between their property and any lands to the north thereof had been established by "more than ten years of possession and use," and that before July, 2021, they had "uninterrupted and public possession of their land for more than thirty years, with a gated and fenced boundary."

**For these reasons, the court is compelled to resolve the boundary issue between the parties as dictated by Civil Code article 794, that is, based on acquisitive prescription.**

(Emphasis added.)

14

In a boundary action, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties. La. C.C.P. art. 3693. The boundary shall be fixed according to the ownership of the parties; however, if neither party proves ownership, the boundary shall be fixed according to limits established by possession. La. C.C. art. 792. See also 2 La. Civ. L. Treatise, Property § 11:34 (5th ed.).

When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds. La. C.C. art. 794. Such a title holder may attain the thirty-year possessory period—which is necessary to perfect prescriptive title in the absence of good faith and just title—by "tacking" on to the possession of his ancestor in title. La. C.C. arts. 794 and 3442; Kadair v. Hampton, 2013-1171 (La. App. 1st Cir. 7/10/14), 146 So. 3d 694, 702, writ denied, 2014-1709 (La. 11/7/14), 152 So. 3d 177. The party claiming acquisitive prescription bears the burden of proof. See La. C.C. art. 794; Marcello v. Jo-Blanche Corporation, 2020-1113 (La. App. 1st Cir. 6/4/21), 330 So. 3d 632, 639, writ denied, 2021-01666 (La. 1/19/22), 331 So. 3d 330.

Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith. La. C.C. art. 3486. For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487. The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription. The possession must be continuous, uninterrupted, peaceable, public, and unequivocal. La. C.C. art. 3476. Corporeal possession is the exercise of physical acts of use, detention, or

enjoyment over a thing. La. C.C. art. 3425. To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La. C.C. art. 3424. One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title. In the absence of title, one has possession only of the area he actually possesses. La. C.C. art. 3426. One is presumed to intend to possess as owner unless he began to possess in the name of and for another. La. C.C. art. 3427.

Whether a party has possessed property for purposes of thirty-year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Additionally, the location of a boundary line is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error. Where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference and are virtually never manifestly erroneous or clearly wrong. Kadair, 146 So. 3d at 702 (citing Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989)).

Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. It is only when documents or objective evidence so contradict the witness's story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit the witness's story, that the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Kadair, 146 So. 3d at 702 (citing Rosell, 549 So. 2d at 844-845).

16

The evidence presented herein established that Allen J. Hebert, Jr., who is the great grandson of Leon Hebert and who was 77 years of age at the time of trial, recalled going out on the property at the age of five or six. He recalled the state paving the road when he was six, and his father purchasing culverts from the Police Jury to install on the property to access the road when he was twelve. At that time, which would have been in 1957 or 1958, he recalled his grandfather placing an iron stake on the section line of the property to mark the property line. He testified that a barbed wire fence ran next to the stake into the marsh. His grandfather had eight children and each one paid a share of the property taxes on the property. He further testified that he signed a lease authorizing Denbury Management, Inc. to install an oil well on the property and that when Denbury drilled the well they installed a fence in the same location as the "old fence."[8] Denbury also installed a gate that he had access to until Mr. Belanger denied him access.

Allen Hebert's sons, Beau and Brian, testified that their father began taking them on the property as children to fish and crab. Beau testified that when he was old enough to drive in 1993, he would drive down and hunt and fish on the property. He stated he still hunts the property to this day. Beau recalled the old rusted barbed wire fence that was used as a boundary line between the Hebert tract and the Authement tract. Brian testified there was an old fence on the northern boundary of the Hebert tract. He testified that Denbury replaced the fence with a metal fence with cable running through it and that the Authements never contested the location of the fence. Brian testified that as he and his brother got older and started driving, they would drive to the property and duck hunt. Brian took

---

[8]According to the lease, the Lessee was Marsh Land Production Company, who subsequently assigned the lease to Denbury Management, Inc., Fina Oil and Chemical Company, and Kelley Oil Corporation.

photographs of the property in 2020, 2021, and 2022 identifying where the fence and entry to the property was located, which were introduced at trial.

Defendants presented the testimony of Mr. Belanger, Mr. Dupre, and Mr. Martin. Yet, as noted by the trial court, the evidence presented by defendants failed to challenge the possession claimed by plaintiffs.

After the reviewing the testimony and evidence submitted herein, the trial court determined that the Leon Hebert heirs possessed the property in question for more than thirty years, and thus it was not necessary to consider good faith or just title. The trial court further determined that plaintiffs proved by a preponderance of the evidence that the Leon Hebert heirs possessed a substantial part of the property claimed by defendants "well in excess of thirty years." The trial court found that plaintiffs' intent to corporeally possess the property "was evidenced by continuous, uninterrupted, peaceable, public, and unequivocal acts from at least 1958 until the summer of 2020, within one year before they filed the instant suit."

The trial court further determined that, after reviewing numerous plats surveyed over the course of decades, the maps consistently show that the northern boundary of the Hebert tract "is very near and parallel to the section line separating Section 7 from Section 52 in Township 19 South, Range 19 East" and that "the plats clearly show the well was drilled well south of the section line and south of the northern boundary of the Leon Hebert heirs property, on property designated as property of the Leon Hebert heirs." In setting the boundary line, assessing the extent of possession exercised by the Leon Hebert heirs, the trial court found that:

> Based on the testimony of all of the witnesses, including the defendants' surveyor, Terral J. Martin, Jr., the court believes the possession of the Leon Hebert heirs included all of the lands south of the line separating Section 52 from Section 7 in Township 19 South, Range 19 East, Terrebonne Parish, Louisiana, as depicted on that map dated June 24, 2020, entitled 'Survey of a Portion of Property Belonging to Marlene Authement, et al[.] Located in Sections 7 & 52, T19S-R19E Terrebonne Parish, Louisiana,' received as evidence in this case. (Defendants' Exhibit No. 22.)

After a thorough review of the testimony and evidence herein, we find the record supports the trial court's determination that plaintiffs continually, peaceably, and publicly possessed the property for over thirty years prior to Superior's acquisition of an interest in the property. We further find no error with the trial court's placement of the boundary line between the two contiguous tracts utilizing defendants' survey plat to support the location of the boundary line. Finding no manifest error in the judgment of the trial court, we find no merit to this assignment.

## Description of the Boundary Line
## (Assignment of Error Number Four)

In their final assignment of error, defendants contend that the judgment fails to "fully describe" the property. Defendants aver that although the judgment establishes the northern and southern boundaries, it fails to define the eastern and western boundaries, the batture, or the property that extends across the bayou.

In a boundary action, the trial court renders judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties. La. C.C.P. art. 3693; Marcello, 330 So. 3d at 638. We are aware of no authority, and defendants have provided no authority, that requires the trial court to fix the circumference of *all* boundaries of a property when all boundaries are not in dispute.

In the judgment rendered herein, the trial court set forth a detailed description of the boundary line between the two contiguous tracts as follows:

> [T]he southern boundary of the immovable property owned in whole or in part by the defendant, Superior Rental Properties, LLC, to wit:

> A certain tract of marshland situated in the Parish of Terrebonne, at about 22 miles below the City of Houma, situated in Section 7 & 52, Township 19 South, Range 19 East, Parish of Terrebonne, Louisiana, fronting on both descending banks of Bayou Terrebonne, bounded North

19

or above by on both banks of said Bayou Terrebonne by land of Caliste Forest, formerly, now Superior Rental Properties LLC; East by the east line of Section 7 & 52, T19S-R19E; South or below on both banks of said Bayou Terrebonne by the heirs of Mr. and Mrs. Leon Hebert; and West by the west line of said Section 7 & 52, T19S-R19E, having a frontage of 163 feet by depth of survey; together with all buildings and improvements thereon, as well as all rights, ways, privileges and servitudes thereunto belonging or in anywise appertaining;

is the northern boundary of the immovable property owned in whole or in part by plaintiffs, Rena V. Labat, John Guidry, Allen J. Hebert, Jr., and Donald J. Verret, Jr., to wit[:]

A certain tract of land in the Parish of Terrebonne, on both sides of Bayou Terrebonne, at about twenty-one miles below the City of Houma, Louisiana, measuring 426 feet 9 inches front on either side of said Bayou, by depth of survey, bounded above by the heirs of Gustave Authement, et al[.], and bounded below by Robert Cunningham, formerly, now Bouvier Properties, LLC; together with all improvements and buildings thereon, and all rights, ways, privileges and servitudes thereunto belonging or in anywise appertaining;

which southern boundary line for the defendant's property and northern boundary line for the plaintiffs' property is hereby established and declared to be that line separating Section 52 from Section 7 in Township 19 South, Range 19 East, Terrebonne Parish, Louisiana, as depicted on that map dated June 24, 2020, entitled "Survey of a Portion of Property Belonging to Marlene Authement, et al[.] Located in Sections 7 & 52, T19S-R19E Terrebonne Parish, Louisiana," prepared by Providence Engineering and Design, LLC.

Plaintiffs herein sought the fixing of a boundary line between the Hebert tract and Authement tract (now owned by Superior), which is precisely what the trial court accomplished in the judgment. By utilizing this section line as the boundary, the court could not have been more precise.

This assignment of error lacks merit.

## CONCLUSION

For the above and foregoing reasons, the March 7, 2023 judgment of the trial court is affirmed. All costs of this appeal are assessed against the defendants/appellants, Superior Rental Properties, LLC and Kevin P. Belanger.

20

**AFFIRMED.**